WALTHAM CITIZENS NATIONAL BANK *vs.*
JAMES W. FLETT, JR.

Middlesex.     February 6, 1968. — February 29, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Bills and Notes,* Holder in due course, Bank, Check.   *Bank and Banking.*

Where it appeared in an action that a check, drawn by the defendant payable to a corporation and indorsed by it, was deposited in its overdrawn checking account in a bank, that the bank permitted the corporation to draw against the check to its full amount immediately to liquidate a note to the bank, and that the bank took the check in good faith and without knowing of insolvency of the corporation or any defence against the check and the next day started the collection process on the check, it was held that the bank acquired "a security interest" in the check within G. L. c. 106, § 4–208 (1), gave value therefor within § 4–209, and became a holder in due course within § 3–302, and that printed terms on the deposit slip accompanying the check were of no benefit to the defendant and he was liable to the bank for the amount of the check upon stopping payment thereof.

CONTRACT. Writ in the Third District Court of Eastern Middlesex dated April 27, 1964.

Upon removal to the Superior Court the action was heard by *Beaudreau,* J.

The case was submitted on briefs.
*David D. Leahy & Stuart DeBard* for the defendant.
*William C. Hays* for the plaintiff.

WILKINS, C.J. This action of contract is on a check for

$9,000, dated March 26, 1964, drawn by the defendant on the Harvard Trust Company, payable to J. J. Ryan Construction Co., Inc. (Ryan), and indorsed and deposited by Ryan in its checking account with the plaintiff. A judge of the Superior Court found for the plaintiff. The defendant's exceptions are to rulings and to the denial of his requests for rulings.

The following is from the material evidence summarized in the record. Ryan had a checking account with the plaintiff. This account had been overdrawn from time to time. John J. Ryan, the treasurer of Ryan, talked to an officer of the plaintiff "every week" about its financial condition. On March 26, 1964, John J. Ryan obtained from the defendant the $9,000 check as a loan. On that day the Ryan account in the plaintiff bank was overdrawn in the amount of $11,190.87. That same afternoon, John J. Ryan went to the plaintiff bank after banking hours and made two deposits, respectively of $1,708 and $9,000, the latter being the check in suit. The deposit slip for $9,000 was filled in by the bank's president. It was not uncommon for him to do this nor was there anything unusual about keeping the bank open after hours. Because the bank's president knew the defendant's reputation in the area, he permitted Ryan to draw against the check immediately to liquidate a note of Ryan due on March 27, and returned the note to Ryan. At the same time, John J. Ryan signed a note for $6,000 payable to the plaintiff, the proceeds of which, $5,963.83, were deposited to Ryan's account.

On March 27 the plaintiff put the check through the Federal Reserve Bank, and started the collection process. The bank's president said that he knew of no infirmity in the check. The plaintiff was in no hurry to put the check through, and its president did not know that Ryan "initiated bankruptcy proceedings" on Easter Sunday, March 29, by calling upon a lawyer.

Ryan had been trying to negotiate a loan for $100,000 in Boston. It "owed the Government withholding money." After March 26 Ryan discovered it was not getting a loan.

On March 30 its treasurer told the defendant that the only solution was bankruptcy, and to stop payment on the check, which he did.

Ryan went into voluntary bankruptcy on March 31, 1964, and never resumed business. On April 1 the plaintiff was informed by the Federal Reserve Bank that payment had been stopped on the check which was being returned. "The check was never paid to the bank."

The judge rightly concluded that the plaintiff was a holder in due course. It was stated in his findings and rulings that the plaintiff took the check for value in good faith without notice of any defence against it or claim to it on the part of any person, or that it had been dishonored. The plaintiff did not know of the insolvency of Ryan, and there was no "type of fraud practiced that would protect the defendant." "The plaintiff bank gave instant credit" to the deposit by Ryan of the defendant's check by accepting another check for $9,000 drawn by Ryan on its account with the plaintiff in payment of its note which was simultaneously returned to Ryan. The judge ruled that the plaintiff had "acquired a security interest" in the check.

The judge's findings of fact were warranted by the evidence, and, to the extent that they may have been, in substance, rulings, were correct.

The Uniform Commercial Code, G. L. c. 106, § 4–208, inserted by St. 1957, c. 765, § 1, provides, "(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either (a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied." *Universal C. I. T. Credit Corp.* v. *Guaranty Bank & Trust Co.* 161 F. Supp. 790, 792–793 (D. Mass.). To the extent of this security interest, the plaintiff gave value. G. L. c. 106, § 4–209.[1] *Citizens Bank* v. *National Bank of Commerce,* 334 F. 2d 257, 261 (10th Cir.).

---

[1] "For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of section 3–302 on what constitutes a holder in due course."

The plaintiff fully complied with the Code's requirements to become a holder in due course found in § 3–302. "(1) A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." *Pazol* v. *Citizens Natl. Bank,* 110 Ga. App. 319, 322–323.

The plaintiff, a holder in due course which did not deal with the defendant drawer of the check, took the item free of any defences which the defendant might have had, save certain exceptions not here material. G. L. c. 106, § 3–305. See *Peoples Bank* v. *Haar,* 421 P. 2d 817, 819 (Okla.).

The defendant's request for a ruling that the plaintiff was bound by the printed terms on the deposit slip was properly denied as being a matter between the plaintiff and Ryan from which the defendant could derive no benefit. If the purpose was to show that the plaintiff was merely a collecting agent (cf. *Boston-Continental Natl. Bank* v. *Hub Fruit Co.* 285 Mass. 187), it would have added nothing. Under the Code, § 4–201,[2] a bank's continuing status as a collecting agent does not prevent it from becoming a holder in due course if it satisfies the requirements of § 3–302. See § 4–208.

The ruling that the defendant was indebted to the plaintiff was right. See *Saint Paul Ins. Co.* v. *First Natl. Bank,* 254 F. Supp. 265, 266 (E. D. Okla.); *Linwood State Bank* v. *Time Plans, Inc.* 407 S. W. 2d 654, 656–657 (Kans. City Ct. App.); *Citizens Natl. Bank* v. *Fort Lee Savs. & Loan Assn.* 89 N. J. Super. 43, 50–52.

*Exceptions overruled.*

---

[2] "(1) Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final . . . the bank is an agent . . . of the owner of the item and any settlement given for the item is provisional. This provision applies regardless of the form of indorsement or lack of indorsement and even though credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn; but the continuance of ownership of an item by its owner and any rights of the owner to proceeds of the item are subject to rights of a collecting bank such as those resulting from outstanding advances on the item and valid rights of set-off."