ST. CLOUD NATIONAL BANK & TRUST CO. v. SOBANIA CONSTRUCTION CO., INC., AND ANOTHER. McGLYNN-GARMAKER COMPANY, APPELLANT.

224 N. W. 2d 746.

November 1, 1974—No. 44359.

*Feinberg, Mirviss, Meyers & Schumacher* and *George G. Seltz*, for appellant.

*Roger R. Schmitt,* for respondent bank.

Heard before Sheran, C. J., and Peterson, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

PER CURIAM.

This action was brought by St. Cloud National Bank & Trust Co. (hereafter plaintiff) to recover moneys advanced against a check which was deposited with the bank for collection but was later dishonored. The main issue is whether the bank is protected, as a holder in due course, for advances made to its depositor before the check cleared. Plaintiff sought and obtained summary judgment against the drawer who stopped payment on the check. We affirm.

On October 27, 1971, defendant McGlynn-Garmaker Company, a general contractor, subcontracted with defendant Sobania Construction Co. Inc. (Sobania) for the framing of an apartment building. On or about January 27, 1972, McGlynn-Garmaker (hereafter defendant) issued a check payable to Sobania in the sum of $17,900 representing a progress payment. On February 2, defendant learned that plaintiff bank, where Sobania maintained an account, was not honoring payroll checks drawn by Sobania to pay its employees for work being performed under the contract. On the basis that this constituted failure of consideration for the progress payment, defendant stopped payment on the check on February 2 by notifying Sobania and First Minneapolis, the drawee bank.

Meanwhile, the check was deposited by Sobania in plaintiff

bank on February 2 and was forwarded to the Federal Reserve Bank which received it on February 3. First Minneapolis received the check on February 4 and returned it to plaintiff marked "payment stopped." Plaintiff first received notice of the stop-payment order by phone call from the Federal Reserve Bank on February 7. During the interval between the deposit of the check and notice of the stop-payment order, plaintiff granted credit and made payment upon checks drawn by Sobania in the sum of $7,130.44.

The right of plaintiff bank to recover on the check here in question depends upon proof of its status as a holder in due course. Minn. St. 336.3—307(3). The requirements with which any holder must comply to achieve this status are set forth in Minn. St. 336.3—302(1):

"A holder in due course is a holder who takes the instrument
(a)    for value; and
(b)    in good faith; and
(c)    without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

1.    With respect to the element of value, the general rule prior to adoption of the Uniform Commercial Code (UCC) was that a collecting bank was a holder in due course to the extent that it had allowed a depositor to draw against a check given for collection, notwithstanding that the check was later dishonored. See, Annotation, 59 A. L. R. 2d 1173. This result is continued by the provisions of the UCC which give the depository bank a security interest in the check to the extent that credit given for the check has been withdrawn or applied. Minn. St. 336.4—208 and 336.4—209; Citizens Nat. Bank of Englewood v. Fort Lee Sav. & Loan Assn. 89 N. J. Super. 43, 213 A. 2d 315 (1965); Falls Church Bank v. Wesley Heights Realty, Inc. 256 A. 2d 915 (D. C. Ct. App. 1969); Waltham Citizens Nat. Bank v. Flett, 353 Mass. 696, 234 N. E. 2d 739 (1968). The requirement of value being thus satisfied, the elements of good faith and notice remain to be considered.

2. Plaintiff, on its motion for summary judgment, attached as an exhibit a copy of its records showing financial transactions during the time of the transactions here in question, which were explained by plaintiff's head bookkeeper in an affidavit supporting the motion. Plaintiff also submitted an affidavit of its president stating that the handling and processing of the check was in the "usual course of business." Defendant submitted opposing affidavits in which two bankers stated that in their opinions, under the facts of this case, standard banking practice would be to withhold any payment on the check until it had been collected. It is difficult to determine from the record whether the defense to the holder-in-due-course assertion is negligence, lack of good faith, notice, or some combination of these, but defendant on appeal apparently considers "good faith" to be the central issue, and predicates lack of good faith on plaintiff's allegedly negligent handling of Sobania's account. Defendant makes no express reference to the "notice" element of Minn. St. 336.3—302(1).

"Good faith" is defined in the UCC as "honesty in fact in the conduct or transaction concerned." Minn. St. 336.1—201(19). This test was dealt with in Eldon's Super Fresh Stores v. Merrill Lynch, 296 Minn. 130, 136, 207 N. W. 2d 282, 287 (1973), where this court stated:

"* * * In Minnesota Code Comment to § 336.1—201(19), 21A M.S.A. 75, Professor Stanley V. Kinyon indicates this good-faith test is a subjective rather than an objective test. The test requires honesty of intent rather than absence of circumstances which would put an ordinarily prudent holder on inquiry in order to constitute good faith. [Citations omitted.] In short, it is an issue of honesty of intent rather than of diligence or negligence. Some term it the 'white heart' test."

The validity of this test in the factual context of this case finds support in Englewood v. Fort Lee Sav. & Loan Assn. *supra,* a case involving the same type of commercial transaction. The

drawer of the check in that case contended that the depository bank did not act in good faith and was chargeable with notice because it allowed the payee-depositor to draw against uncollected funds at a time when his account was either very low or overdrawn. The court stated that the existence of these facts, "currently or in the past, if true, would not constitute notice to the collecting bank of an infirmity in the underlying transaction or instrument and is not evidence of bad faith chargeable to the bank at the time it allowed withdrawal against the deposited check." 89 N. J. Super. 48, 213 A. 2d 318.

Defendant's reliance on alleged negligence as evidence of bad faith is misplaced. In dealing with a "fictitious payee" situation in Jeanette Frocks, Inc. v. First Produce State Bank, 272 Minn. 234, 242, 137 N. W. 2d 205, 211 (1965), we said:

"* * * The conduct of the bank under the circumstances is to be determined by the simple test of honesty and good faith and not by speculative claims of negligence or want of diligence. * * *

"Mere negligence or want of diligence in failing to make inquiry is not sufficient to constitute want of good faith for purposes of qualifying as a holder in due course."

Aside from claims of negligence, defendant points to nothing in the record indicating a lack of honesty in intent on the part of plaintiff or any of its officers or employees. Moreover, the two affidavits on which defendant relies to raise fact issues are by their own terms mere statements of opinion with regard to "prudent and standard business practice followed by banking institutions." Regardless of the wisdom of those opinions,[1] they raise

---

[1] The "standard business practice" described by the two affiants was the subject of the following comments in Citizens Nat. Bank of Englewood v. Fort Lee Sav. & Loan Assn. 89 N. J. Super. 43, 51, 213 A. 2d 315, 319 (1965): "It would hinder commercial transactions if depositary banks refused to permit withdrawal prior to clearance of checks. Apparently banking practice is to the contrary. It is clear that the Uni-

no issues of fact with regard to plaintiff's good faith.

3. Defendant also raises a procedural issue on this appeal, contending that it did not have the opportunity to complete its discovery so as to establish genuine issues of lack of good faith and negligence on the part of plaintiff. The only person whose deposition is sought by defendant is plaintiff's head bookkeeper, professedly for the purpose of determining the exact number and frequency of Sobania's overdrafts.[2] It is difficult to see how any facts which might be discovered on such a deposition could raise fact issues bearing on plaintiff's good faith or honesty of intent.

Defendant failed at the time of the motion for summary judgment to show that specific facts existed which created a genuine issue with regard to plaintiff's status as a holder in due course, and thus the motion was properly granted.

Affirmed.

---

form Commercial Code was intended to permit the continuation of this practice and to protect banks who have given credit on deposited items prior to notice of a stop payment order or other notice of dishonor."

[2] The trial court, in its memorandum, agreed with the plaintiff stating: "There does not appear to be any merit in seeking additional testimony or depositions. The thrust of defendants' claim is that the existence of over-drafts of Sobania Construction Co., Inc. should be a notice that McGlynn-Garmaker's [defendant's] check is going to be dishonored when given to Sobania. Assuming that Sobania was constantly overdrawn, it is difficult to see the link between the inability of Sobania to handle its finances and the obligation of the maker of a check who forwards a check to Sobania."