Jack FRANTZ, Appellant,

v.

FIRST NATIONAL BANK OF
ANCHORAGE, Appellee.

FIRST NATIONAL BANK OF ANCHOR-
AGE, Cross-Appellant,

v.

Jack FRANTZ, Cross-Appellee.

Nos. 3325, 3328.

Supreme Court of Alaska.

Sept. 29, 1978.

Stephen D. Cramer, Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellant and cross-appellee.

John R. Beard, Anchorage, for appellee and cross-appellant.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

This case arises under the commercial paper article of the Uniform Commercial Code as enacted in Alaska.[1] A section of that article provides that the drawer of a check which is dishonored is liable to its holder.[2] If the holder is not a holder in due course he takes the check subject to all defenses which the drawer has against any other party to the check.[3] A holder in due course, on the other hand, takes the check free from all but a very limited class of defenses.[4] In this case the court determined that the First National Bank of Anchorage was a holder in due course of a dishonored check drawn by Jack Frantz and granted summary judgment in favor of the bank. Frantz now appeals. We hold that summary judgment was properly granted.

The relevant facts are as follow. Frantz wrote a check for $35,776.15 on his account at Alaska National Bank of the North, payable to Wilson & Son, as partial payment for building a house. Wilson deposited it in his account at First National Bank of Anchorage. First National cashed the check and covered $10,504.86 in overdrafts on Wilson's account, credited $24,495.14 to his account and paid him $776.15 in cash. The following day Frantz filed a stop payment order with Alaska National which dishonored the check when First National presented it for payment. Frantz decided to stop payment of the check after he learned that Wilson had not paid certain subcontractors who might lien his property. His decision

1. AS 45.05.246–402.

2. AS 45.05.344(b).

3. AS 45.05.316(2).

4. AS 45.05.314(2).

was made after First National had cashed the check.

About a month before the transaction in question, First National had received information from a Fairbanks contractor that Wilson was planning to leave Alaska without paying his bills. Since the bank was a creditor of Wilson, two of its officers, Renfrew and Harris, questioned him concerning the report, and he denied it.

There was also evidence that First National's normal practice was to withhold credit on a check until five days after its deposit. Where the bank knew the drawer to be a responsible person, however, it would waive the waiting period and extend immediate credit to the depositor.

██ On the morning of the day of the disputed transaction, Renfrew had been on the verge of dishonoring the overdrafts on Wilson's account. Before he did so, Wilson deposited Frantz' check, and the deposit was brought immediately to Renfrew's attention. Renfrew ascertained that the bank had extended immediate credit on Frantz' checks in the past. He also requested verification of the check from Alaska National, and testified that it had informed his teller that the check was "good at this time". Frantz, on the other hand, asserts that First National merely inquired into Frantz' credit rating. For the purposes of this appeal we accept as true the version advanced by Frantz.[5]

First National sued Frantz to recover $11,281.01, the funds it had disbursed before it received notice of the stop payment order.

A holder in due course is a holder who takes a check for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against it or claim to it on the part of any person.[6] In his appeal Frantz does not dispute the fact

5. *Wickwire v. McFadden*, 576 P.2d 986 (Alaska 1978); *Webb v. City and Borough of Sitka*, 561 P.2d 731, 734 (Alaska 1977); *Braund, Inc. v. White*, 486 P.2d 50, 54 (Alaska 1971).

6. AS 45.05.308(a).

that First National gave value for the check, but argues that there are factual questions concerning the existence of good faith and notice which preclude the entry of summary judgment.

■ The Code defines "good faith" as "honesty in fact in the conduct or transaction concerned."[7] A determination of whether a depositary has acted in good faith involves a subjective inquiry as to whether the bank extended credit on a check having knowledge of facts which suggests that the check would eventually be dishonored.[8]

■ Frantz set forth no facts indicating that First National had any basis for believing that he would not honor the check that he wrote to Wilson. Absent such subjective knowledge, the extension of immediate credit on a check does not manifest bad faith. While the Uniform Commercial Code does not require a depositary to give immediate credit on a check,[9] it encourages this practice by granting the bank rights against the drawer of the check on which immediate credit is extended.[10]

Assuming that the bank departed from its customary practice in extending immediate credit on Frantz' check, we fail to see how such a departure has any tendency to prove that the bank did not honestly expect that the check would be paid. At the time the bank honored the check, even Frantz had no intention of stopping payment. Whether or not First National's conduct conformed to a standard of reasonableness is immaterial, for the draftsmen of the Uniform Commercial Code expressly rejected the idea of including a concept of objective commercial reasonableness within the meaning of good faith.[11]

Frantz also contends that questions of fact exist as to whether or not First National had notice which disqualified it from becoming a holder in due course. Frantz points out that First National knew of Wilson's overdrafts, and that the bank had heard a month before the transaction that Wilson was planning to leave Alaska.

■ The Code states that "a person has 'notice' of a fact when (A) he has actual knowledge of it; (B) he has received a notice or notification of it; or (C) from all the facts and circumstances known to him at the time in question he has reason to know that it exists."[12] Subjective and objective tests are therefore used to determine whether a depositary had notice of a defense to a check, i. e., whether it knew or should have known of a defense against a particular instrument at the time it was negotiated for value.[13] Absent actual knowledge or reason to know, a bank has no affirmative duty to inquire whether a defense exists.[14]

■ Frantz did not demonstrate the existence of facts showing that First National had notice of any defenses to his check. At the time Wilson was given credit on the check, Frantz did not even know of the defenses which subsequently caused him to file a stop payment order; it stretches credulity to assert that First National either knew or should have known of them. First National's awareness of Wilson's overdrafts

---

7. AS 45.05.020(19).

8. *Bowling Green, Inc. v. State Street Bank and Trust Co.*, 425 F.2d 81, 85 (1st Cir. 1970); *St. Cloud National Bank and Trust Co. v. Sobania Construction Co., Inc.*, 302 Minn. 71, 224 N.W.2d 746, 748 (1974); *Eldon's Super Fresh Stores, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 296 Minn. 130, 207 N.W.2d 282, 287 (1973); *Community Bank v. Ell*, 278 Or. 417, 564 P.2d 685, 691 (1977).

9. AS 45.05.444(e).

10. AS 45.05.434–436; *Exchange National Bank of Winter Haven v. Beshara*, 236 So.2d 198, 201 (Fla.App.1970); *Citizens National Bank of En-*

*glewood v. Fort Lee Savings & Loan Association*, 89 N.J.Super. 43, 213 A.2d 315, 319 (1965).

11. J. White & R. Summers, *Uniform Commercial Code* § 14–6 at 1471–72 (1972).

12. AS 45.05.020(25).

13. *Eldon's Super Fresh Stores, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra* note 8, 207 N.W.2d at 287–288.

14. *McCook County National Bank v. Compton*, 558 F.2d 871, 876 (8th Cir. 1977).

or rumored plans to depart is not probative because knowledge of a depositor's financial problems does not impart notice of a defense to a check issued to him by a third party.[15]

 First National has filed a cross-appeal from the court's refusal to award it costs or attorney's fees. The court denied the award for the stated reason that First National had failed to observe its alleged customary practice of waiting five days before extending credit on a check. In view of the policy of the Code to encourage immediate credit, we believe that the bank should not be penalized for this reason. It is, however, conceivable that a denial of an award of costs and attorney's fees to the bank might be justified for reasons not expressed by the court.[16] We remand this question to the superior court with instructions either to enter an award of costs and attorney's fees in favor of First National or to express appropriate reasons why such an award should be denied.

AFFIRMED IN PART; REMANDED IN PART.

---

**15.** *St. Cloud National Bank and Trust Co. v. Sobania Construction Co., Inc., supra* note 8, 224 N.W.2d at 748–749, *citing Citizens National Bank of Englewood v. Fort Lee Savings and Loan Association, supra* note 10.

**16.** *Cooper v. Carlson,* 511 P.2d 1305, 1311 (Alaska 1973).