405 So.2d 1039 (1981)
Barry SEINFELD, Appellant,
v.
COMMERCIAL BANK & TRUST COMPANY, a Florida Banking Corporation, Appellee.
No. 80-2433.
District Court of Appeal of Florida, Third District.
November 10, 1981.
*1040 Lyons & Farrar and Marsha L. Lyons, Miami, for appellant.
Levine, Reckson, Reed & Geiger and Robert S. Geiger, Miami, for appellee.
Before SCHWARTZ, NESBITT and JORGENSON, JJ.
SCHWARTZ, Judge.
In unjustified reliance on the representations of a lady friend named Rachel Wolfson that they would not be negotiated, Barry Seinfeld gave her three checks, totalling $160,000, payable to the order of Wolfson's corporation, Yahalomit, Inc. Predictably enough, Wolfson almost immediately deposited the checks to the corporate account at the Commercial Bank & Trust Co., the present appellee. Although that account was then in an overdraft position of some $57,000, Wolfson requested that the checks be given immediate clearance. This was granted at once, notwithstanding that Commercial had no prior acquaintance with Seinfeld, and did not ask Seinfeld's bank, Great American, the status of the account upon which the checks were drawn, an inquiry which would have revealed a balance of about $2,000. Commercial then credited the overdrawn balance and permitted Wolfson to make additional withdrawals against the checks in the total sum of $157,402.09. When the checks were dishonored by Great American for insufficient funds, Commercial sued Seinfeld for that amount plus interest, alleging that it had become a holder in due course of the instruments. Seinfeld's amended answer denied this and asserted his non-liability on the checks essentially on the ground of fraud in the inducement.[1] This appeal is from a summary final judgment entered in *1041 the bank's favor. We reverse on a holding that the bank did not carry its required statutory and procedural burden conclusively to establish its status as a holder in due course with the consequent right to recover on the checks as a matter of law.
When the summary judgment was entered the trial court had before it Seinfeld's affidavit and deposition which basically described the circumstances under which he wrote the checks and the status of his bank account. On the other side, the bank supported its motion with a single affidavit, that of Robert Singleton, the vice-president in charge of operations at the branch office where Wolfson's account was located. The affidavit recounted the series of events concerning the presentation, immediate clearance and crediting of the checks which has been described. As to the bank's knowledge of the surrounding circumstances and its own role in the transactions, Singleton, who was not shown to have met with Wolfson or otherwise to have personally participated in the decision-making process, stated only,
Affiant, upon personal knowledge, as well as information and belief states that between June 13, 1980 and June 19, 1980, the Bank had no knowledge, nor was it put on notice by any third party that the subject checks would not be honored upon presentment; that any person, including the maker, had any defense or claim against the payee effecting the validity or enforceability of the subject instruments; and the Bank at all times acted and intended to act honestly and in good faith with respect to the instruments in question.
This portion of the affidavit was obviously an attempt to track the statutory requisites of a holder in due course[2] that he take the instrument "in good faith," Section 673.302(1)(b), Florida Statutes (1979)  which is in turn defined as "honesty in fact in the conduct or transaction concerned," Section 671.201(19)  and "without notice ... of any defense against or claim to it on the part of any person." Section 673.302(1)(c).[3]
As the party claiming that it was a holder in due course, the bank had the burden affirmatively to establish that this was the case. Section 673.307(3), Florida Statutes (1979). In moving for summary judgment on that issue, moreover, it was required conclusively to establish the nonexistence of a genuine issue of material fact, Holl v. Talcott, 191 So.2d 40 (Fla. 1966), concerning its good faith in paying on the instruments and lack of notice of Seinfeld's defenses to them. It is clear that the general statements in the affidavit, which are framed in terms only of conclusions of law, do not satisfy that burden. See Falls Poultry Distributing Co. v. Canner, 372 So.2d 129 (Fla.3d DCA 1979) and cases collected; Freeman v. Equilease Corp., 346 So.2d 619 (Fla.3d DCA 1977). In addition, since as the bank correctly contends, the issue of both "good faith," see Baraban v. Manatee National Bank of Bradenton, 212 So.2d 341 (Fla.2d DCA 1968); Frantz v. First National Bank of Anchorage, 584 P.2d 1125 (Alaska 1978), and lack of notice, Section 671.201(25) Florida Statutes (1979) are based upon the bank's subjective knowledge and state of mind, the failure to submit the testimony of those employees who actually dealt with Wolfson concerning these facts made it impossible, on the face of the matter, for the movant to sustain its position on these questions. See also, Campbell v. Salman, 384 So.2d 1331, 1333 (Fla.3d DCA 1980).
*1042 Furthermore, while we might agree with the bank that, standing alone, neither its indulgence of a chronically overdrawn depositor, St. Cloud National Bank & Trust Co. v. Sobania Construction Co., Inc., 302 Minn. 71, 224 N.W.2d 746 (1974) nor its failure to observe the normal commercial practices of waiting for the checks to clear and determining the balance in Seinfeld's account before paying on them might not have been sufficient evidence of "bad faith," see Frantz v. First National Bank of Anchorage, supra; Exchange National Bank of Winter Haven v. Beshara, 236 So.2d 198 (Fla.2d DCA 1970), the coexistence of all these factors raises at least a reasonable inference that the bank acted as precipitately and "foolishly" as it did in order to attempt to shift to Seinfeld its own probable loss from Wolfson's machinations  an intent and motivation which demonstrate the antithesis of good faith. Community Bank v. Ell, 278 Or. 417, 564 P.2d 685, 691-92 (1977), rehearing denied, 279 Or. 245, 566 P.2d 903 (1977). It is true that the Florida version of the holder in due course provision of the U.C.C. does seem to protect the objectively stupid so long as he is subjectively pure of heart.[4] See Frantz v. First National Bank of Anchorage, supra; J. White & R. Summers, Uniform Commercial Code § 14-6 (2d ed. 1980); compare, Potter Bank & Trust Co. v. Massey, 11 Misc.2d 523, 171 N.Y.S.2d 27 (Sup.Ct. 1958) (applying original U.C.C. § 3-302(1)(b) requirement of "good faith including observance of the reasonable commercial standards of any business in which the holder may be engaged.") But playing dumb is not the same as being dumb. A mere protestation of one's own innocence is not enough conclusively to demonstrate that this is really true when the trier of fact could find from the admitted circumstances that something more than simplemindedness lay behind the conduct in question.
Surely, the "circumstances of the holder's taking the checks were [not] free of all doubt" so as to permit the summary disposition rendered below. Northside Bank of Tampa v. Investors Acceptance Corp., 278 F. Supp. 191, 192 (W.D.Pa. 1968); see also, duPont v. County National Bank of North Miami Beach, 369 So.2d 443 (Fla.3d DCA 1979); Travelco of Florida, Inc. v. Burnett, 338 So.2d 50 (Fla.3d DCA 1976), cert. denied. 345 So.2d 421 (Fla. 1977); A.B.G. Investment, Inc. v. Selden, 336 So.2d 444 (Fla. 4th DCA 1976); Vernon v. Yanks, 303 So.2d 375 (Fla.3d DCA 1974). It is therefore reversed and the cause remanded for further consistent proceedings.
Reversed.
NOTES
[1] It is clear that fraud in the inducement is a personal defense of the maker which is not available against a holder in due course. Section 673.305, Florida Statutes (1979); Citizens National Bank of Englewood v. Fort Lee Savings and Loan Association, 89 N.J. Super. 43, 213 A.2d 315 (1965); Citizens National Bank of Quitman v. Brazil, 141 Ga. App. 388, 233 S.E.2d 482 (1977); see Bank of America v. Dade Federal Savings & Loan Association of Miami, 154 So.2d 191 (Fla.3d DCA 1963) (pre-U.C.C. law.)
[2] Section 673.302(1) provides in its entirety

673.302 Holder in due course. 
(1) A holder in due course is a holder who takes the instrument:
(a) For value; and
(b) In good faith; and
(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
[3] The third requirement, that a holder take the instrument "for value," Section 673.302(1)(a), was clearly satisfied by the bank's payments and credits upon the checks, even though they were initially taken for collection. Sections 674.208(1)(a), 674.209, Florida Statutes (1979); Exchange National Bank of Winter Haven v. Beshara, 236 So.2d 198 (Fla.2d DCA 1970).
[4] The notion of a bank as Parsifal may strike one as the quintessential paradox.