SUNBELT SAVINGS, FSB DALLAS, TEXAS, Plaintiff–Appellee,

v.

George Michael MONTROSS, Defendant–Appellant.

No. 90–1510.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1991.

Marc S. Culp, Sheehan, Young & Culp, P.C., Dallas, Tex., for defendant-appellant.

John Edwards, Haynes & Boone, Dallas, Tex., for Sunbelt Savings, FSB.

Before GEE, REAVLEY, and SMITH, Circuit Judges.

GEE, Circuit Judge:

Today we decline to extend the federal holder in due course doctrine to protect the FDIC or its successors from the personal defenses of makers of non-negotiable promissory notes, holding that as a matter of federal common law the doctrine does not apply to non-negotiable instruments. Having announced this rule, we go on to conclude that the defendant did submit sufficient evidence to avoid summary judgment on his prevention of performance claim. We also conclude that a summary judgment ruling on defendant's other affirmative defenses would be premature. Accordingly, we reverse and remand for consistent proceedings.

### Background

On March 18, 1986, George Montross executed a $1.1 million variable interest promissory note in favor of Sunbelt Savings (Old Sunbelt). Mr. Montross defaulted on the note. Old Sunbelt foreclosed, purchased the security at foreclosure sale, and, on May 24, 1988, filed suit against Mr. Montross for the deficiency. Shortly after filing suit, Old Sunbelt failed. The FSLIC (now FDIC) assumed control and established Sunbelt Savings, FSB (New Sunbelt). Mr. Montross defended against the deficiency suit on two grounds: (1) Old Sunbelt prevented him from transferring the note to a new debtor as allowed by the deed of trust, thus, excusing his performance; and (2) as an affirmative defense, he satisfied the conditions in the deed of trust, thus, absolving him of personal liability for the note. New Sunbelt, having intervened as plaintiff, moved for summary judgment on the grounds that the federal holder in due course doctrine barred all of Mr. Montross' defenses and that Mr. Montross had failed to produce evidence to establish a genuine dispute over a material fact. Mr. Montross countered that the federal holder in due course doctrine should not apply to the non-negotiable instrument at issue in this case and that he had either presented sufficient evidence to avoid summary judgment or had been denied the opportunity for effective discovery so as to do so. The district court granted New Sunbelt's motion, ruling that the federal holder in due course doctrine applies to non-negotiable instruments, and bars all Mr. Montross' defenses as a matter of law. The district court, however, did not evaluate the summary judgment evidence and dismissed the

discovery dispute as moot. Mr. Montross appeals.

## Standard of Review

Summary judgment is appropriate only if, after adequate discovery, there is no genuine dispute over any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Pennington v. Vistron Corp*, 876 F.2d 414 (5th Cir.1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121 (5th Cir.1988). Material facts are those facts that will affect the outcome of the lawsuit under governing law, *see Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10; and a genuine dispute requires more than a metaphysical doubt—there must be an issue for trial. *See Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56.

## The Federal Holder in Due Course Doctrine and Non–Negotiable Instruments

The district court granted summary judgment in favor of New Sunbelt after concluding that the federal holder in due course doctrine applies to non-negotiable instruments and, thus, bars all of Mr. Montross' defenses. This conclusion presents us with an issue of first impression: whether the federal holder in due course doctrine protects the FDIC and its successors from personal defenses to the enforcement of non-negotiable instruments.

■ The federal holder in due course doctrine bars makers of promissory notes from asserting personal[1] defenses against the FDIC and its successors in connection with purchase and assumption transactions involving troubled financial institutions. *See FSLIC v. Murray*, 853 F.2d 1251, 1256

(5th Cir.1988).[2] The FDIC enjoys this protection as a matter of federal common law so that it may achieve the congressional mandate of the "sound, effective, and uninterrupted operation of the [nation's] banking system with resulting safety and liquidity of bank deposits." S.Rep. No. 1269, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong. & Admin.News 3765, 3765–66; *see also Campbell Leasing*, 901 F.2d at 1244–46. The federal holder in due course doctrine facilitates uninterrupted operation of the banking system by allowing the FDIC to complete purchase and assumption transactions quickly and based on the face value of a failed bank's negotiable instruments, obviating the need to scrutinize the instruments for personal defenses. The doctrine also prevents makers from using personal defenses to gain priority over the failed bank's creditors' and depositors' rights to the note proceeds.

To date, our holdings have been limited. In *Murray*, we held that the "FSLIC has at least the rights of a holder in due course when it acquires a negotiable instrument in a purchase and assumption transaction." *Murray*, 853 F.2d at 1256.

In *Campbell Leasing*, we extended the ambit of federal holder in due course doctrine by holding that the FDIC and its successors may be federal holders in due course without meeting the technical state-law requirements for holder in due course status. *Campbell Leasing*, 901 F.2d at 1249. In *Campbell* the defendant had argued that the federal holder in due course doctrine should not apply to the FDIC when notes are acquired in bulk transfers. Under Texas law bulk transferees do not enjoy holder in due course status. *Campbell* rejected this requirement, recognizing that the FDIC receives notes by bulk transfer involuntarily and as a matter of course, thus, such a technical state-law requirement cannot be allowed to defeat the policy behind federal holder in due course doctrine. Likewise the "for value," "without

---

**1.** We have differentiated personal and real defenses by reference to state law. *See Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1249 (5th Cir.1990); *see also* Tex.Bus. & Comm.Code § 3.305.

**2.** *Murray* sets out and correctly summarizes the relevant authority from other circuits. We will not repeat that analysis here.

notice of prior dishonor," and "without notice of contrary claims" requirements of state-law should also be waived when the FDIC assumes control of negotiable instruments.

The FDIC also directs our attention to *In re CTS Truss, Inc.,* 859 F.2d 357 (5th Cir. 1988); but we find *CTS* inapposite. We concluded in *CTS* that 12 U.S.C. § 1823(e) prevents equitable subrogation of the FDIC's claims against a bankrupt entity. In dicta, *CTS* drew an analogy between section 1823(e) and the federal holder in due course doctrine, citing *Murray* for the proposition that the FSLIC enjoys the rights of a holder in due course respecting "assets" it receives from failed banks. *See In re CTS Truss, Inc.,* 859 F.2d at 362. This is not a correct statement of our holding in *Murray* nor, being dicta, is it controlling upon us.

■ After carefully reviewing our decisions and the policy underlying them, we decline to extend federal holder in due course status to the FDIC or its successor in cases in which it acquires non-negotiable instruments through purchase and assumption transactions. Respecting our decisions, *Murray*'s holding was expressly limited to *negotiable instruments* acquired by purchase and assumption. *Campbell Leasing* did not deal with negotiability at all. It merely excused the FDIC from compliance with the bulk transfer exclusion of Texas holder in due course law. *CTS,* being off point, carries little weight.

Turning to the policy analysis, we conclude that a judicial extension of the federal holder in due course doctrine to non-negotiable instruments is unwarranted. We recognize the vital role of the FDIC in ensuring the sound, effective, and uninterrupted operation of our banks. We also recognize that the FDIC requires some special protections to enable it to perform this function effectively. For example, the FDIC must be protected from the effect of secret agreements. *See D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); 12 U.S.C. § 1823(e) (1988). Likewise, we recognize that, because of the circumstances surrounding purchase and assumption transactions, the FDIC must be accorded holder in due course status when it takes a negotiable instrument in a bulk transfer even if this does not meet the technical requirements of state law. *See Campbell Leasing,* 901 F.2d at 1249; *Murray,* 853 F.2d at 1255–56. The FDIC also reminds us that many banks in our Circuit have large numbers of variable-interest—and thus non-negotiable—notes.

At first blush, these policy justifications seem to apply with equal force to non-negotiable instruments. On closer examination, however, we conclude that applying the doctrine to non-negotiable instruments is fundamentally different from the earlier protections that we have afforded the FDIC. *Murray, Campbell Leasing, D'Oench,* and section 1823(e) all act to prevent the FDIC from being disadvantaged when it is forced to assume control of a troubled financial institution. Under these decisions, the FDIC is protected from the disadvantages attendant upon its role, but the nature of the assets the FDIC receives from the institutions remains unchanged. Conversely, extending federal holder in due course protection to non-negotiable instruments would bestow a benefit on the FDIC by changing the assets' nature—actually enhancing their value.

We do not view negotiability as a technical requirement. Negotiability is the foundation underlying all of Article Three and of holder in due course status in particular. Under Article Three of the Uniform Commercial Code, negotiable instruments enjoy various protections, including the possibility that they will come into the possession of a holder in due course. When the negotiable note is in the hands of a holder in due course, the maker is left with few defenses, thus, the instrument's value is enhanced. Non-negotiable instruments, however, are contractual obligations, which do not enjoy holder in due course protections. The makers of variable interest rate notes sign only a contractual obligation to repay their debt; they had no expectation that holder in due course doctrine would strip them of their defenses.

Extending holder in due course status to the FDIC and its successors respecting non-negotiable instruments is both unnecessary and undesirable. When the FDIC assumes control of an institution, the assets are what they are—negotiable instruments, contracts, real property, and so on. We agree that the FDIC should not be disadvantaged by the circumstances of its assumption of control, but this policy does not require giving the FDIC the ability to transmute lead into gold. Allowing the FDIC to transform contracts into negotiable instruments would defeat the reasonable commercial expectations of the variable interest note makers. Carried only a little further, this transformation would affect all contracts and even the title to real property. Alchemy is the province of Congress; therefore, we decline to extend *Murray* and *Campbell Leasing* to non-negotiable instruments.

### Summary Judgment Evidence

■ Having concluded that there is no legal barrier to his defenses, we now consider whether Mr. Montross submitted sufficient evidence to avoid summary judgment. Mr. Montross contends that he has submitted sufficient evidence or, in the alternative, that he has been denied sufficient discovery to be able to do so. First, Mr. Montross contends that he should be excused from the requirement of supplying a creditworthy debtor to assume his note because Old Sunbelt prevented him from fulfilling this condition. *See, e.g., O'Shea v. International Business Machs. Corp.*, 578 S.W.2d 844, 846 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Anderson Dev. Corp. v. Coastal States*, 543 S.W.2d 402, 406 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Supporting this claim Mr. Montross submitted his own affidavit, the affidavit of Michael Lasich, and Old Sunbelt's answers to interrogatories. This evidence establishes that at least sixteen persons, corporations, associations, or entities contacted Old Sunbelt expressing an interest in assuming Mr. Montross' note. The evidence also suggests that Old Sunbelt discouraged applicants, refused to provide required forms, delayed for long periods, and in one case told a California resident that only a Texan could assume the note. We conclude that this evidence is sufficient to raise a genuine issue regarding Mr. Montross' prevention claim; therefore, summary judgment was improper.

Mr. Montross also contends, as an affirmative defense, that he satisfied the conditions in the deed of trust, thus absolving himself of personal liability for any deficiency. The deed of trust required Mr. Montross to provide a transferee that met Old Sunbelt's customary underwriting standards, creditworthiness criteria, management ability criteria, and loans-to-one-borrower limits. The record does not contain evidence sufficient to avoid summary judgment on this defense, but Mr. Montross argues that he has been denied discovery.

■ At argument, the FDIC maintained that Mr. Montross has had two years to gather his evidence, but failed to do so. Yet, we conclude that Mr. Montross was not dilatory in his discovery efforts. On June 24, 1988, shortly after Old Sunbelt filed its deficiency suit, Mr. Montross requested production of all documents relating to Old Sunbelt's underwriting standards, creditworthiness standards, and loan limits for the period March 1986 through December 1987. All of these documents relate directly to Mr. Montross' affirmative defense. The only such document Old Sunbelt produced was its credit policy, which became effective December 15, 1987. Mr. Montross again sought documents pertaining to his affirmative defenses from New Sunbelt when he deposed Mr. Leggett, the Old Sunbelt employee who dealt most closely with Mr. Montross' loan; but again Mr. Montross received no documents pertinent to the March 1986 through December 1987 time frame. In March 1989, Mr. Montross turned to the FSLIC (now FDIC) to obtain the necessary documents, and again no documents were produced. Likewise, both Old Sunbelt's and New Sunbelt's answers to interrogatories failed to provide the necessary information. In response to his discovery difficulties, Mr. Montross filed a

motion to compel production on June 7, 1989, which was denied by the magistrate in charge. Mr. Montross then sought district court review of the magistrate's decision, but the district court—ruling that the federal holder in due course doctrine barred all defenses in this case—dismissed review of the magistrates order as moot. The history of the discovery dispute, as well as the ground on which the district court based its summary judgment ruling convinces us that the summary judgment on Mr. Montross' affirmative defense is premature.

### Conclusion

We hold that the federal holder in due course doctrine does not protect the FDIC or its successors from personal defenses asserted by the makers of non-negotiable instruments. We also conclude that Mr. Montross presented sufficient evidence to avoid summary judgment on the issue whether Old Sunbelt prevented his performance under the non-negotiable note. Finally, respecting Mr. Montross' affirmative defenses to New Sunbelt's deficiency action, we conclude that a summary judgment ruling is premature. Accordingly, we REVERSE and REMAND for consistent proceedings.