610 So.2d 531 (1992)
M.E. LASSITER and Donna Marie Lassiter, his wife, Appellants,
v.
RESOLUTION TRUST CORPORATION, etc., et al., Appellee.
No. 91-685.
District Court of Appeal of Florida, Fifth District.
December 4, 1992.
Rehearing Denied January 11, 1993.
*533 Sam Baxter Bardwell, Titusville, for appellants.
Catherine Gouze, Tampa, and Ann S. Duross, Colleen B. Bombardier, Edward J. O'Meara, Jaclyn C. Taner, and Sheila Kraft Budoff, Washington, DC, for appellee Resolution Trust Corp.
W. SHARP, Judge.
The Lassiters appeal from a final summary judgment of mortgage foreclosure in favor of the Resolution Trust Corporation as conservator for Florida Federal Savings. They argue that the summary judgment was improper because the RTC failed to negate their affirmative defenses of fraud, failure of consideration and setoff. The RTC contends that the Lassiters' defenses are barred by the D'Oench[1] doctrine, 12 U.S.C. § 1823(e) and the federal holder in due course doctrine. We disagree that D'Oench and 12 U.S.C. § 1823(e) bar consideration of the Lassiters' defenses, and while the federal holder in due course doctrine might bar consideration of these defenses, this issue was not raised below and the record does not conclusively establish that it applies here. Accordingly, we reverse the summary judgment and remand for further proceedings.
This case arose when the Lassiters decided to consolidate several small loans from Northeast Mortgage Corporation and one loan from Old Stone Credit Corporation. The Lassiters borrowed the necessary funds to pay off these loans from Florida Federal and executed a mortgage on their home to secure the note. Florida Federal directed its closing agent, Atlantic Title and Escrow Company, to pay off the loan from Old Stone and the loans from Northeast. The Old Stone loan was paid off but Northeast cashed the check and absconded with the funds. Unbeknown to the Lassiters, Northeast had sold its loans to individual investors.
Ultimately, the private investors contacted the Lassiters and for several months, the Lassiters paid both the Florida Federal mortgage and made payment to the private investors. Eventually, the Lassiters stopped making any payments. Florida Federal then filed this action to foreclose its mortgage. The RTC was later substituted for Florida Federal as the party plaintiff.
The RTC contends that the Lassiters' defenses are barred under federal common law first established in D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In that case, D'Oench sold bonds to an Illinois bank and later defaulted on those bonds. D'Oench executed a note to the bank which allowed the bank to carry *534 the bonds on its records and not show them as past due. The receipt for the note contained the statement "[t]his note is given with the understanding that it will not be called for payment. All interest payments to be repaid." After the bank was taken over by the F.D.I.C., the F.D.I.C. sued D'Oench to recover on the note. D'Oench defended on the basis that the parties never intended for the note to be repaid and that the note was given without any consideration. The district court held that the F.D.I.C. was the holder of the note in good faith and for value and that D'Oench was estopped from asserting lack of consideration as a defense.
On appeal, the Supreme Court declared that a federal policy existed to protect the F.D.I.C. against misrepresentations as to the assets and liabilities in the portfolios of the banks which it insured or to which it made loans. Thus, as a matter of federal common law, D'Oench could not rely upon the agreement, which was not reflected in the bank's records, to defeat recovery by the F.D.I.C. The Court further held that fraudulent intent was not necessary. It said, "The test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled." 315 U.S. at 460, 62 S.Ct. at 681.
While the D'Oench doctrine protects federal regulators from secret, unrecorded, or unclear agreements, it does not protect those agencies from bilateral obligations which are evident on the face of the documents at issue. Baumann v. Savers Federal Savings & Loan Ass'n, 934 F.2d 1506, 1517 (11th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); Howell v. Continental Credit Corp., 655 F.2d 743 (7th Cir.1981).
Application of D'Oench in such circumstances would not further the purposes of the doctrine. Bank examiners cannot be misled by documents that evidence the true obligations of the parties. Although appropriate, documentation cannot inform examiners of whether or not an institution will breach its agreements, such documentation does inform examiners of the extent of the institution's obligations, and therefore puts examiners on notice of the riskiness of an obligation and the amount of potential liability should the agreement be breached. Examiners are fully aware that any agreement could be breached, and the likelihood of this occurring must be taken into account in an evaluation of an institution's assets and liabilities. Thus, the protections provided to the deposit insurance fund by the D'Oench doctrine would not be furthered by allowing financial institutions to breach valid agreements or to carry them out in bad faith.
Baumann, 934 F.2d at 1517. See also Federal Savings & Loan Insurance Corp. v. Gordy, 928 F.2d 1558, 1563 (11th Cir.1991); Federal Deposit Insurance Corp. v. McCullough, 911 F.2d 593, 600 (11th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). Under this standard, the borrower must be able to point to documents that clearly manifest the bilateral nature of the parties' rights and obligations. Id.
In the cases cited by the RTC, the agreements relied upon by the borrowers were not found in the bank's records nor did they clearly establish the bank's obligations. See Baumann v. Savers Federal Savings & Loan Ass'n (testimony regarding oral representations of bank that it was a partner with borrower in shopping center project, that it would alter the interest payment schedule and fund litigation, none of which was contained in written loan documents, prohibited by D'Oench doctrine); Savers Federal Savings & Loan Ass'n. v. Amberley Huntsville, Ltd., 934 F.2d 1201 (11th Cir.1991) (testimony that bank had agreed to act as a partner in venture contrary to terms of the note and to accept cash flow payments rather than regular payments specified in the note prohibited by D'Oench); Federal Savings & Loan Insurance Corp. v. Gordy, (D'Oench doctrine precluded borrowers' defenses based on bank's misrepresentation of its financial *535 status where there were no documents in the bank's records which established that payment of the obligation was conditioned on the truth of the bank's financial statement given to the borrowers); Twin Construction, Inc. v. Boca Raton, Inc., 925 F.2d 378 (11th Cir.1991) (borrower could not rely on written document in bank's records which outlined the bank's obligation where the form was unsigned by bank officials); Federal Deposit Insurance Corp. v. McCullough (borrower could not avoid D'Oench doctrine by relying on documents in bank's records where the documents were insufficient to give bank examiners notice that the bank had a fixed commitment to act in a manner other than that set forth in the loan documents); F.S.L.I.C. v. Two Rivers Associates, Inc., 880 F.2d 1267 (11th Cir.1989) (borrower was precluded from relying on S & L's agreement to fund entire project where documents on record did not establish an explicit acceptance of the obligation to fund the entire project; ambiguous reference to a further construction loan was insufficient).
The present case does not involve a secret or unrecorded agreement (as in D'Oench) which modifies the terms of the parties' agreement. Rather, the documents on record at least arguably show obligations by the bank and the Lassiters. The loan approval letter states that the loan to Old Stone Credit Corporation and several loans from Northeast Mortgage Corporation will be paid from the loan proceeds. The closing instructions to the bank's title company referred to payment of the loans from Old Stone and Northeast. While the Lassiters may not necessarily succeed in their defenses, the defenses themselves are not barred by D'Oench because these claims arise directly from loan documents which were in the bank's records. Since federal regulators would have had notice of the bank's obligations, the D'Oench doctrine is inapplicable and summary judgment on this ground was improper.
The rule announced in D'Oench was later codified as 12 U.S.C. § 1823 (e). Sunchase Apartments v. Sunbelt Service Corp., 596 So.2d 119 (Fla. 1st DCA 1992); Baumann v. Savers Federal Savings & Loan Association, 934 F.2d 1506 (11th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); Bell & Murphy Associates v. Interfirst Bank Gateway, N.A., 894 F.2d 750 (5th Cir.), cert. denied, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); Federal Deposit Insurance Corp. v. Wood, 758 F.2d 156 (6th Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). In its 1989 version, § 1823(e) provides as follows:
(e) Agreements against interests of Corporation
No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement 
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of this execution, an official record of the depository institution.
The exact relationship between D'Oench and § 1823(e) is unclear. Federal Savings & Loan Insurance Corp. v. Gordy, 928 F.2d 1558, 1562 n. 9 (11th Cir.1991). For example, in Adams v. Walker, 767 F. Supp. 1099 (D.Kans. 1991), the court held that § 1823(e) expands D'Oench in that it applies to any agreement, whether it was secret or not and regardless of the maker's participation in the scheme. At the same time, however, the statute is narrower that D'Oench because it applies only to agreements and not to other defenses the borrower *536 might raise. In any event, the courts have generally held that the purposes of D'Oench and § 1823 are the same and the two have been construed in tandem. Federal Savings & Loan Insurance Corp. v. Gordy, 928 F.2d at 1562; Federal Deposit Insurance Corp. v. McCullough, 911 F.2d at 598, n. 4; Twin Construction, Inc. v. Boca Raton, Inc., 925 F.2d at 382. Even if D'Oench did not bar the Lassiters' defenses, these defenses must nonetheless meet the statutory requirements of § 1823. Tuxedo Beach Club Corp. v. City Federal Savings Bank, 749 F. Supp. 635, 643 (D.N.J. 1990) (documents constituting the agreement relied on by borrower must satisfy each of the requirements of § 1823(e) and D'Oench).
To determine whether § 1823(e)'s prohibition applies, a two-step analysis is required: 1) was there a valid agreement; and 2) does the agreement satisfy § 1823(e)'s documentation requirements. Federal Deposit Insurance Corp. v. Sullivan, 744 F. Supp. 239 (D.Colo. 1990). In Langley v. F.D.I.C., 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the United States Supreme Court broadly construed the word "agreement." In that case, Langley and others had borrowed money from a bank to finance the purchase of land in Louisiana. In consideration for the loan, Langley executed a note, collateral mortgage and personal guarantees. When Langley failed to pay an installment due on a renewal of the note, the bank filed suit. As a defense against the bank's claim, Langley alleged that the land purchase and the note had been procured by the bank's misrepresentations overstating the amount of land and mineral acres in the tract and falsely stating that there were no outstanding mineral leases on the property. Langley contended that his misrepresentation defense was not covered by § 1823(e) because the word "agreement" encompassed only an express promise to perform an act in the future. The United States Supreme Court rejected this narrow definition of "agreement" and held that an agreement included not only a promise to perform a future act but also any condition or warranty, the truthfulness of which is a condition precedent to performance of the contract. Under Langley, the bank's obligation to pay the Lassiters' prior loans would constitute an "agreement."
The RTC, however, claims that the Lassiters failed to show that the loan documents met the documentation requirements of § 1823(e), particularly the "contemporaneous" requirement. The note and mortgage were dated June 20, 1988. The loan approval letter was dated June 9, 1988 and was signed by the Lassiters on June 15, 1988. These events all took place within eleven days. In the cases in which the courts have found that the agreement failed to meet the contemporaneous requirement, the amount of time between the execution of the agreement and the acquisition of the assets by the bank was much greater. See, e.g., Federal Deposit Insurance Corp. v. Wright, 942 F.2d 1089 (7th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992) (note was signed on November 12, 1982 and the alleged side agreement was written almost four months later on March 10, 1983); F.D.I.C. v. La Rambla Shopping Center, 791 F.2d 215 (1st Cir.1986) (note was executed in 1970 and side agreement was executed in 1968, two years before); F.D.I.C. v. Virginia Crossings Partnership, 909 F.2d 306 (8th Cir.1990) (memorandum from March and July of 1983 did not satisfy the contemporaneous requirement for notes executed on December 30, 1983); Resolution Trust Corp. by Federal Deposit Ins. v. Crow, 763 F. Supp. 887 (N.D.Texas 1991) (letters of June 16 and June 28, 1988, some five years after the making of the notes at issue, failed to meet contemporaneous requirement); Federal Deposit Insurance Corp. v. Friedland, 758 F. Supp. 941 (S.D.N.Y. 1991) (estoppel letter of May 10, 1984, did not meet the contemporaneous requirement as to a note acquired by the bank on July 5, 1984); Federal Deposit Insurance Corp. v. Manatt, 688 F. Supp. 1327 (E.D.Ark. 1988), aff'd, 922 F.2d 486 (8th Cir.) cert. denied, ___ U.S. ___, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991) (agreement executed on January 4, 1984, did not meet the contemporaneous requirement as *537 to notes which were executed as early as December 1990).
As to the other requirements, the record is insufficient to determine whether the Lassiters' affirmative defenses would be barred by § 1823(e). Based on this record, RTC is not entitled to summary judgment. See Davis v. Irwin Appraisal & Consulting Services, 585 So.2d 348 (Fla. 5th DCA 1991) (genuine issue of material fact existed where status of company, which would determine its liability, was unclear from the evidence).
Finally, the RTC argues that the Lassiters are barred from asserting their affirmative defenses because the RTC is accorded the status of a holder in due course.[2] The federal holder in due course doctrine bars the maker of a promissory note from asserting personal defenses against the Federal Deposit Insurance Corporation in connection with purchase and assumption transactions involving troubled financial institutions. Sunbelt Savings, F.S.B. Dallas, Texas v. Montross, 923 F.2d 353 (5th Cir.), opin. reinstated in part on rehearing, Resolution Trust Corp. v. Montross, 944 F.2d 227 (5th Cir.1991); Federal Deposit Insurance Corporation v. McCullough, 911 F.2d 593 (11th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); Campbell Leasing, Inc. v. F.D.I.C., 901 F.2d 1244 (5th Cir.1990); F.S.L.I.C. v. Murray, 853 F.2d 1251 (5th Cir.1988). This protection extends to subsequent holders of the notes. Montross, 923 F.2d at 355; Campbell Leasing, 901 F.2d at 1248.
The purpose of this protection is to achieve the congressional mandate of the "sound, effective, and uninterrupted operation of the [nation's] banking system with resulting safety and liquidity of bank deposits." Montross, 923 F.2d at 355, quoting Senate Report No. 1269, 81st Congress, 2d Session, Reprinted in 1950 U.S. Code Congressional and Administrative News, 3765-66. The federal holder in due course doctrine facilitates the uninterrupted operation of the nation's banking system by allowing the F.D.I.C. and F.S.L.I.C. to complete purchase and assumption transactions quickly, based on the face value of a failed institution's negotiable instruments, without the need to scrutinize the instruments for personal defenses. The doctrine also prevents makers from using personal defenses to gain priority over the failed institution's creditors and depositors' rights to the note proceeds. Montross, 923 F.2d at 355; Campbell Leasing, 901 F.2d at 1248-1249.
Both the Eleventh Circuit and the Fifth Circuit have differentiated personal and real defenses by reference to state law. Montross, 923 F.2d at 355, n. 1; McCullough, 911 F.2d at 603. In Florida, both fraud in the inducement and failure of consideration are personal defenses which cannot be asserted against a holder in due course. § 673.305, Fla. Stat. (1991); § 673.408, Fla. Stat. (1991); First National Entertainment Corporation v. Brumlik, 531 So.2d 403 (Fla. 5th DCA 1988); Seinfeld v. Commercial Bank & Trust Co., 405 So.2d 1039 (Fla. 3d DCA 1981).
In response, the Lassiters argue that the RTC is not a holder in due course under Florida law. See § 673.302, Fla. Stat. (1991). The federal courts have held that the F.D.I.C. and subsequent note holders enjoy the rights of a holder in due course even without meeting the technical requirements of state laws. For example, in Federal Savings & Loan Insurance Corp. v. Murray, the Fifth Circuit held that the F.S.L.I.C. should be treated as a holder in due course under federal law even though it did not meet the requirements of Louisiana law because it had acquired the notes involved through a purchase and assumption transaction, rather than in the normal course of business. The federal courts have generally protected the F.D.I.C. or the F.S.L.I.C. from personal defenses when a note is acquired in execution of a purchase *538 and assumption transaction; as long as the note was acquired in good faith, for value, and without actual knowledge of the claims at the time the purchase and assumption agreement was entered. See Federal Deposit Insurance Corp. v. Leach, 772 F.2d 1262 (6th Cir.1985); F.D.I.C. v. Wood, 758 F.2d 156 (6th Cir.) cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985).
In McCullough, the Eleventh Circuit noted that the federal common law doctrine granting the F.S.L.I.C. or the F.D.I.C. holder in due course status is designed to afford these institutions the same protections to which they would be entitled had they satisfied state law requirements. Of course, the court noted that holder in due course status does not automatically attach to these agencies by their very nature. For example, if the agency had participated in fraud, its actual participation would preclude the agency from claiming holder in due course status. 911 F.2d at 603-604, n. 10. The courts have also declined to extend this protection to nonnegotiable notes. Federal Savings & Loan Insurance Corp. v. Mackie, 962 F.2d 1144, 1151 (5th Cir.1992); Sunbelt Savings, F.S.B. Dallas, Texas v. Montross.
Assuming that the Lassiters' note is negotiable and that the RTC enjoys the status of a holder in due course, the federal holder in due course doctrine would bar assertion of the Lassiters' personal defenses of fraud and failure of consideration. Under Florida law, the party claiming that it is a holder in due course has the burden to affirmatively establish that status. Seinfeld, 405 So.2d at 1041. And, as the moving party for summary judgment, the RTC was required to conclusively establish the nonexistence of a genuine issue of material fact. Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Seinfeld. The Lassiters point out that the federal holder in due course doctrine was not raised in the RTC's motion for summary judgment nor at the hearing below. The Lassiters also point out that the RTC took over Florida Federal at the very time litigation was involved in foreclosing the note and mortgage. The Lassiters argue that the RTC's actual knowledge of the fraud and lack of good faith prior to acquiring Florida Federal's assets would preclude the agency from claiming holder in due course status. See F.D.I.C. v. Leach; F.D.I.C. v. Wood; Gunter v. Hutcheson, 674 F.2d 862 (11th Cir.1982). These issues, as well as the negotiability of the note, must be resolved before the federal holder in due course doctrine bars application of the Lassiters' defenses. F.S.L.I.C. v. Mackie.
Since the federal holder in due course doctrine was not raised below and the record does not conclusively establish that the RTC is a holder in due course of a negotiable instrument, the summary judgment in favor of the RTC cannot be upheld on this ground. See, e.g., Mackie; Montross; Leach. Accordingly, the final summary judgment is reversed and the cause remanded to determine the applicability of the federal holder in due course doctrine.
REVERSED and REMANDED.
GOSHORN, C.J., and COWART, J., concur.
NOTES
[1] D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).
[2] A mortgage ordinarily does not in itself have the quality of negotiability. However, when given to secure a negotiable instrument, the mortgage in the hands of a holder in due course shares the same immunity as to defenses as the note itself. 37 Fla.Jur.2d, Mortgages & Deeds of Trust § 536 (1982).