JORGENSON, Judge.
Espirito Santo Bank of Florida appeals from three final judgments entered on jury verdicts in favor of three related companies. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
Agronomics Finance Corp. imported coffee and seafood from South America and engaged in currency exchange; Venture Planners Investments, Inc., and Venture Planners Management provided various services to Agronomics. The three companies opened separate corporate accounts at Espirito Santo Bank. Corporate resolutions filed with the bank required that each check, debit, or transfer be signed by two-of the four officers listed. During 1987 and 1988, the companies’ accounts were debited a number of times on the authority of only one corporate officer. One of the officers listed on the corporate resolution, Montealegre, in a series of 52 transactions *1079 in 1988, debited large sums of money from the corporate accounts.[1]
Throughout this period the three companies were regularly drawing checks on uncollected or insufficient funds. In April, 1988, the bank extended $500,000 in credit to Agronomics, believing that it was a good credit risk. In monitoring the companies’ accounts to protect its investment, the bank discovered the companies’ practices of drawing on insufficient funds and of debiting accounts without the two signatures required. The companies’ checks were returned unpaid, and the accounts became hopelessly overdrawn. Financial ruin soon followed as the businesses collapsed.
The companies sued the bank, alleging that the bank had transferred corporate funds and debited corporate accounts without regard to the corporate resolution that required the signatures of two officers. The bank defended on the ground that the companies had ratified the conduct of the bank by allowing numerous transactions to be accomplished, without protest to the bank, on the authority of a single officer’s signature. The companies sought damages for the amount of the withdrawals that were accomplished in breach of the corporate resolutions and also sought consequential damages. The jury found the bank negligent and awarded damages totalling $4.4 million.[2] The damages awarded consisted of the improperly debited items and consequential damages. The bank had unsuccessfully sought directed verdicts, judgments notwithstanding the verdicts, new trials, or remittitur.
On appeal, the bank contends that the verdict is against the manifest weight of the evidence. Although the bank concedes that it was negligent in debiting the accounts without the required two authorizations, it argues that, contrary to the jury’s findings, the evidence shows that the companies ratified those payments by failing to protest the withdrawals. See, e.g., Fulka v. Florida Commercial Banks, Inc., 371 So.2d 521 (Fla. 3d DCA 1979) (customer ratified conduct of bank by failing to protest in timely fashion bank’s payment of checks on forged endorsement). A careful review of the record leads us to conclude that the jury was entitled to find that the companies did not ratify the bank’s payments to Montealegre accomplished on his sole authorization. Therefore, we affirm that portion of the jury verdict that found the bank liable. See Handel v. Rudnick, 78 So.2d 709 (Fla.1955) (jury verdict will not be disturbed where ample evidence supports it).
However, we reverse that portion of the final judgment that awarded the companies compensatory damages beyond the amounts of items wrongfully paid from the corporate accounts. “[A]n appellate court should override a jury verdict when ‘there is no competent substantial evidence which sustains the jury’s verdict or, stated in another form, when the verdict is against the manifest weight of the evidence.’ ” MMH Venture v. Masterpiece Prods., Inc., 559 So.2d 314, 316 (Fla. 3d DCA 1990); Rakita v. Rose, 547 So.2d 154 (Fla. 3d DCA 1989), rev. denied, 558 So.2d 19 (Fla.1990).
“The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.” Section 674.104, Fla.Stat. (1989) (emphasis added). Although section 674.104 does not define “bad faith,” the meaning of the term can be gleaned from other sections of the Code. Section 671.201(19), under “General Definitions and Principles of Interpretation,” de *1080 fines “good faith” as “honesty in fact in the conduct or transaction concerned.” Bad faith, therefore, is the lack of good faith; “the lack of good faith must be the result of actual, not constructive knowledge of the wrongdoing tantamount to dishonesty or bad faith.” Barnett Bank v. Regency Highland Condominium Ass’n., 452 So.2d 587, 590 (Fla. 4th DCA), rev. dismissed, 458 So.2d 273 (Fla.1984). A finding of bad faith must be based upon the bank’s subjective state of mind, Seinfeld v. Commercial Bank & Trust Co., 405 So.2d 1039 (Fla. 3d DCA 1981), and is not equated with lack of commercial reasonableness. Matthysse v. Securities Processing Serv., Inc., 444 F.Supp. 1009, 1021 (S.D.N.Y.1977).[3] The record reveals no evidence that the bank’s conduct evinced bad faith as defined by the Uniform Commercial Code. The only evidence that plaintiffs point to as showing bad faith by the bank is testimony by a bank officer that the bank was not concerned with enforcing the two signature requirement until it had loaned Agronomics $500,000 in May, 1988. According to the testimony, when the bank made the loan to the companies, it scrutinized the companies’ accounts more closely and discovered that the companies had made a practice of drawing on uncollected funds and that numerous transactions had been accomplished with only one corporate officer’s approval. Such caution by the bank, although motivated by its own self-interest, was not evidence of wrongdoing or dishonesty. In fact, the very act that the companies point to as evidence of the bank’s bad faith reflects the level of care that the bank should have exercised sooner. The bank concedes that, up until the loan was made, it had acted negligently by failing to comply with the corporate resolution that required two signatures. Although negligent in failing to comply sooner with that resolution and failing to discover its oversight, the bank cannot be twice penalized for both its negligence and the ultimate vigilance that brought an end to that negligence. Therefore, in the absence of any competent evidence of bad faith, the companies are not entitled to recover consequential damages.
In conclusion, we affirm the judgment of liability against the bank but reverse the award of damages. Because the trial court did not provide the jury with a special interrogatory verdict, we are not able to determine the extent of the consequential damages erroneously awarded and, therefore, remand for a new trial on the issue of damages.[4]
Affirmed in part; reversed in part; remanded with directions.

. Montealegre apparently fled to Texas following the discovery of the improper transfers.

. Although the bank sought to provide the court with a special interrogatory verdict to assist the jury in its deliberations, the trial court denied that motion and provided only a general verdict form. The better practice for a trial court to follow in a complex commercial case such as this one would be to provide the jury with a detailed interrogatory verdict. Such a verdict would have been particularly appropriate in this case, where a finding of bad faith was a necessary predicate to an award of consequential damages.

. Effective January 1, 1992, the definition of “good faith" is amended to: "‘[G]ood faith’ means honesty in fact and the observance of reasonable commercial standards of fair dealing.” Ch. 91-70 § 670.105(l)(f), Laws of Fla. We express no view regarding the possible effect the new definition will have on section 674.104, Florida Statutes, and the availability of consequential damages in future litigation where bad faith has been alleged. As the amendment is not effective until January, 1992, it has no bearing on this case.

. On remand, the measure of damages shall be the amounts of the items wrongfully transferred.