NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


LANE A. HOUK,                                    )
                                                 )
          Appellant,                             )
                                                 )
v.                                               )          Case No. 2D15-2583
                                                 )
PENNYMAC CORP., substituted as party             )
plaintiff for CitiMortgage, Inc.; SHANNON        )
HOUK; BELLE MEADE OWNERS                          )
ASSOCIATION, INC., and MORTGAGE                   )
ELECTRONIC REGISTRATION                          )
SYSTEMS, INC.,                                   )
                                                 )
          Appellees.                             )
                                                 )

Opinion filed February 10, 2017.

Appeal from the Circuit Court for Lee
County; Thomas S. Reese, Senior Judge.

Mark P. Stopa of Stopa Law Firm, Tampa,
for Appellant.

Nancy M. Wallace of Akerman LLP,
Tallahassee; William P. Heller and Marc J.
Gottlieb of Akerman LLP, Fort Lauderdale;
and Kathryn B. Hoeck of Akerman LLP,
Orlando, for Appellee, PennyMac Corp.

No appearance for remaining Appellees.


WALLACE, Judge.

Lane A. Houk challenges a final summary judgment of foreclosure entered in favor of PennyMac Corp., an entity that was substituted as the party plaintiff in place of CitiMortgage, Inc., during the pendency of the litigation in the circuit court. Because a genuine issue of material fact exists regarding PennyMac's standing to foreclose, we reverse.

## I. THE FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2005, Mr. Houk executed a note for $584,800 in favor of Cherry Creek Mortgage Co., Inc. Mr. Houk and his wife executed a mortgage on real property in Lee County to secure payment of the note on the same day. A stamp with a signature appearing on a copy of the note indicates that Cherry Creek indorsed the note to the order of CitiMortgage.

On January 11, 2008, CitiMortgage filed a two-count complaint against Mr. and Mrs. Houk and other defendants. Count I of the complaint sought the foreclosure of the note and mortgage. Count II requested the reestablishment of the note that CitiMortgage alleged had been lost. In an affidavit of lost note that was subsequently filed in the case, a document control officer for CitiMortgage stated that the note had been lost or destroyed while it was in the possession of the law firm that was responsible for filing the foreclosure action.[1]

On May 20, 2013, CitiMortgage filed an unsworn motion to substitute party plaintiff seeking the substitution of PennyMac as plaintiff. The motion stated, in pertinent part: "Subsequent to the filing of the present action, the underlying note and mortgage were transferred." A copy of a recorded assignment of mortgage from

---

[1]Counsel for PennyMac had no involvement in the loss of the note.

CitiMortgage to PennyMac was attached to the motion. The circuit court entered an order granting the motion on the same day that it was filed.

After the entry of the order of substitution, PennyMac filed a second amended verified complaint seeking both foreclosure and reestablishment of the lost note. In Count I, PennyMac alleged, in pertinent part:

> 4. CitiMortgage, Inc. subsequently transferred all rights in the note and mortgage to PennyMac Corp.
>
> 5. PennyMac Corp. is entitled to enforce the mortgage and mortgage note pursuant to Florida Statutes § 673.3011(3) as a person not in possession of the instrument who is entitled to enforce the instrument. PennyMac Corp. is entitled to enforce the instrument, but has lost the Mortgage Note pursuant to Florida Statutes § 673.3091.

In paragraph 25 of Count II, PennyMac alleged, in pertinent part: "Plaintiff was in possession of the Note and entitled to enforce it when loss of possession occurred or Plaintiff has been assigned the right to enforce the Note."

Mr. Houk filed an answer to the second amended complaint. In his answer, Mr. Houk generally denied the material allegations of the complaint. He also raised ten affirmative defenses, including the defense that PennyMac lacked standing and that CitiMortgage lacked standing to enforce the note when it filed the action.

PennyMac filed a motion for summary judgment with supporting affidavits. It subsequently filed an amended motion for summary judgment. In its motion, PennyMac sought both foreclosure of the mortgage and reestablishment of the note. On February 25, 2015, the circuit court held a hearing on the amended motion for summary judgment. There is no transcript of this hearing, and the parties have not prepared a statement of the proceedings in accordance with Florida Rule of Appellate

Procedure 9.200(b)(4). At the conclusion of the hearing, the circuit court entered a final judgment of foreclosure. Strangely, the final judgment does not include a provision reestablishing the lost note. Mr. Houk filed a motion for rehearing that was denied. This appeal followed.

## II. THE ISSUES ON APPEAL

On appeal, Mr. Houk raises two issues. First, he argues that the circuit court erred in entering the summary judgment because PennyMac failed to refute his affirmative defenses in its amended motion for summary judgment. Second, Mr. Houk contends that the entry of the summary judgment was error because PennyMac failed to establish its standing to foreclose. We need address only Mr. Houk's second issue.

## III. THE APPLICABLE LAW

Before considering the parties' arguments regarding the issue of standing, it is appropriate to review what PennyMac was required to demonstrate in order to establish its entitlement to enforce the note. PennyMac had to establish that CitiMortgage had standing when the complaint was filed and its own standing when the final judgment was entered. See Lamb v. Nationstar Mortg., LLC, 174 So. 3d 1039, 1040 (Fla. 4th DCA 2015). Section 673.3011, Florida Statutes (2012), addresses the question of how one may qualify as a person entitled to enforce an instrument:

> The term "person entitled to enforce" an instrument means:
>
> (1) The holder of the instrument;
>
> (2) A nonholder in possession of the instrument who has the rights of a holder; or

- 4 -

(3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to s. 673.3091 or s. 673.4181(4).

A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

In this case, PennyMac's claim was that the note had been lost after it had been indorsed by Cherry Creek to the order of CitiMortgage. Therefore, PennyMac had to satisfy the requirements outlined in section 673.3091 in order to prevail. See Federal Nat'l Mortg. Ass'n v. McFadyen, 194 So. 3d 418, 420 (Fla. 3d DCA 2016).

Section 673.3091 provides, in pertinent part, as follows:

(1) A person not in possession of an instrument is entitled to enforce the instrument if:

(a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

(b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and

(c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(2) A person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, s. 673.3081 applies to the case as if the person seeking enforcement had produced the instrument.

It was CitiMortgage—not PennyMac—that was entitled to enforce the note when it was lost. Therefore, PennyMac had to establish that it had directly or indirectly acquired ownership of the note from CitiMortgage. See § 673.3091(1).

In the Lamb case, the Fourth District outlined what a substituted plaintiff seeking to enforce an instrument indorsed to the original plaintiff must establish as follows:

> "When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person." § 673.2051(1), Fla. Stat. (2013). Where a bank is seeking to enforce a note which is specially indorsed to another, it may prove standing " 'through evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer.' " Stone v. BankUnited, 115 So. 3d 411, 413 (Fla. 2d DCA 2013) (quoting BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques, 28 So. 3d 936, 939 (Fla. 2d DCA 2010)); see also Hunter v. Aurora Loan Servs., LLC, 137 So. 3d 570, 573 (Fla. 1st DCA), review denied, 157 So. 3d 1040 (Fla. 2014); Dixon [v. Express Equity Lending Grp., LLLP], 125 So. 3d [965, 967 (Fla. 4th DCA 2013)] (" '[T]he plaintiff must submit the note bearing a special [i]ndorsement in favor of the plaintiff, an assignment from payee to the plaintiff or an affidavit of ownership proving its status as holder of the note.' ") (quoting Rigby v. Wells Fargo Bank, N.A., 84 So. 3d 1195, 1196 (Fla. 4th DCA 2012)). "A witness who testifies at trial as to the date a bank became the owner of the note can serve the same purpose as an affidavit of ownership." Sosa v. U.S. Bank Nat'l Ass'n, 153 So. 3d 950, 951 (Fla. 4th DCA 2014).

Lamb, 174 So. 3d at 1040-41. With these principles in mind, we turn to the parties' arguments about whether PennyMac established the nonexistence of a material fact about its entitlement to enforce the note.

## IV. DISCUSSION

### A. Introduction

Mr. Houk concedes that the affidavit of lost note with the copy of the note attached was sufficient to establish CitiMortgage's entitlement to enforce the note when the complaint was filed. Instead, Mr. Houk contends that PennyMac failed to establish its entitlement to enforce the note at the time of the entry of the summary judgment of foreclosure. In response to Mr. Houk's challenge to its entitlement to enforce the note, PennyMac raises five arguments. First, the absence of a transcript of the hearing on the motion for summary judgment "demands affirmance." Second, the order substituting PennyMac as the party plaintiff was sufficient to give it standing to enforce the lost note. Third, the assignment of mortgage was sufficient to establish its standing to foreclose. Fourth, the allegations of the motion to substitute and the verified second amended complaint were sufficient to establish its entitlement to enforce the lost note. Finally, PennyMac had standing to foreclose as the servicer of the loan. We will consider PennyMac's arguments separately below.

### B. The Absence of a Transcript

PennyMac correctly notes that the record on appeal does not include a transcript of the hearing on the amended motion for summary judgment or a statement of the proceedings prepared in accordance with Florida Rule of Appellate Procedure 9.200(b)(4). "However, hearing transcripts ordinarily are not necessary for appellate review of a summary judgment." Shahar v. Green Tree Servicing LLC, 125 So. 3d 251, 254 (Fla. 4th DCA 2013). We join the Fourth District in agreeing with the Third District, which has addressed this question as follows:

It is the burden of the appellant to bring up a proper record for consideration of the issues presented on appeal. Where the appeal is from a summary judgment, the appellant must bring up the summary judgment record, that is, the motion, supporting and opposing papers, and other matters of record which were pertinent to the summary judgment motion. Those are the portions of the record essential to a determination whether summary judgment was properly entered. However, the hearing on a motion for summary judgment consists of the legal argument of counsel, not the taking of evidence. Consequently, it is not necessary to procure a transcript of the summary judgment hearing, although it is permissible and often helpful to do so.

Seal Prods. v. Mansfield, 705 So. 2d 973, 975 (Fla. 3d DCA 1998) (citations omitted); see also Inglis v. Casselberry, 200 So. 3d 206, 212 (Fla. 2d DCA 2016) (citing Mansfield for the foregoing proposition with approval).

In this case, the record includes the operative complaint, Mr. Houk's answer and affirmative defenses, the motion and the order for substitution of the plaintiff, the amended motion for summary judgment, and the supporting and opposing affidavits, including the affidavit of lost note. Thus we have all of the portions of the record necessary for us to determine whether the summary judgment was properly entered. Under these circumstances, a transcript of the hearing on the motion for summary judgment is not critical to a determination of this appeal.

## C. The Sufficiency of the Order of Substitution

PennyMac asserts that it "became entitled to enforce the lost note when it was substituted as party plaintiff." According to PennyMac, its standing derives from CitiMortgage, the holder of the note when it was lost or destroyed.

Mr. Houk concedes that CitiMortgage had standing to enforce the note when it filed the original complaint. But PennyMac also had to establish its standing to

- 8 -

enforce the note at the time of the entry of judgment.  See Russell v. Aurora Loan Servs., LLC, 163 So. 3d 639, 642 (Fla. 2d DCA 2015).  Here, the lost note had been specially indorsed to CitiMortgage.  In order to establish its entitlement to enforce the lost note, PennyMac could establish standing "through evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer."  BAC Funding Consortium, 28 So. 3d at 939.  PennyMac's filings in support of its motion for summary judgment did not present evidence of any of these things.  In the absence of such evidence, the order of substitution standing alone was ineffective to establish PennyMac's entitlement to enforce the lost note.  See Geweye v. Ventures Trust 2013-I-H-R, 189 So. 3d 231, 233 (Fla. 2d DCA 2016); Creadon v. U.S. Bank, N.A., 166 So. 3d 952, 953-54 (Fla. 2d DCA 2015); Sandefur v. RVS Capital, LLC, 183 So. 3d 1258, 1260 (Fla. 4th DCA 2016); Lamb, 174 So. 3d at 1040-41.

In support of its argument that it has standing to enforce the lost note derived from CitiMortgage through the order of substitution, PennyMac relies on the decision in Brandenburg v. Residential Credit Solutions, Inc., 137 So. 3d 604 (Fla. 4th DCA 2014).  We find the decision in Brandenburg to be distinguishable because its facts are substantially different from the facts in this case.  In Brandenburg, the Fourth District affirmed a final judgment of foreclosure in favor of Residential Credit Solutions, Inc. (RTS).  Id. at 606.  The original plaintiff in the action and prior holder of the note was Amtrust Bank (Amtrust).  Id. at 605.  During the course of the litigation, RTS was substituted as the party plaintiff in place of Amtrust.  Id.  The issue before the Fourth District in Brandenburg was whether Amtrust had standing at the inception of the foreclosure action.  Id.  The Fourth District concluded that the evidence established that

Amtrust had standing to foreclose when it filed the complaint.  Id. at 605-06.  In affirming the final summary judgment of foreclosure, the Fourth District specifically noted that RTS had standing because it had "acquired the note and mortgage from the prior holder."  Id. at 605.  In Brandenburg, it was RTS's acquisition of the note and mortgage from the prior holder—coupled with the order substituting it as party plaintiff—that enabled RTS to pursue the foreclosure to judgment.  In the case before us, PennyMac failed to make a sufficient showing that it had acquired the note from the prior holder, CitiMortgage.  Thus, unlike in Brandenburg, the order of substitution was unavailing to give PennyMac standing to enforce the note.  It follows that PennyMac's reliance on Brandenburg is misplaced.

### D.  The Assignment of Mortgage

PennyMac relies on the copy of the recorded assignment of mortgage that was attached to its motion to substitute plaintiff as being sufficient to establish its standing.  According to PennyMac, "[t]he assignment of mortgage showed the mortgage was assigned 'with all rights due or to become due thereon.'  This would include monies owed on the note.  See § 701.01, Fla. Stat. [(2012)]."  This argument falls short of the mark for several reasons.

First, the assignment transferred only the mortgage, not the note.  "The mortgage follows the assignment of the promissory note, but an assignment of the mortgage without an assignment of the debt creates no right in the assignee."  Tilus v. AS Michai LLC, 161 So. 3d 1284, 1286 (Fla. 4th DCA 2015) (citing Bristol v. Wells Fargo Bank, Nat'l Ass'n, 137 So. 3d 1130, 1133 (Fla. 4th DCA 2014)).  PennyMac did not acquire standing to foreclose based on an assignment of only the mortgage.  See

Eaddy v. Bank of America, N.A., 197 So. 3d 1278, 1280 (Fla. 2d DCA 2016); Caballero v. U.S. Bank Nat'l Ass'n ex rel. RASC 2006-EMX7, 189 So. 3d 1044, 1046 (Fla. 2d DCA 2016); Geweye, 189 So. 3d at 233; Lamb, 174 So. 3d at 1041.

Second, the only evidence of the assignment of the mortgage was the copy attached to the unsworn motion for substitution. Mr. Houk's pleadings did not admit the genuineness of the assignment. The copy of the assignment was not a certified copy, and none of the affidavits filed by PennyMac attested to the authenticity of the document. "Merely attaching documents which are not 'sworn to or certified' to a motion for summary judgment does not, without more, satisfy the procedural strictures inherent in [Florida Rule of Civil Procedure] 1.510(e)." Bifulco v. State Farm Mut. Auto. Ins. Co., 693 So. 2d 707, 709 (Fla. 4th DCA 1997). In the absence of an admission or appropriate proof of the authenticity of the assignment, it could not properly be considered as evidence in support of PennyMac's amended motion for summary judgment. See DiSalvo v. SunTrust Mortg., Inc., 115 So. 3d 438, 439-40 (Fla. 2d DCA 2013); Bryson v. Branch Banking & Trust Co., 75 So. 3d 783, 786 (Fla. 2d DCA 2011); Toyos v. Helm Bank, USA, 187 So. 3d 1287, 1290 (Fla. 4th DCA 2016); Rodriguez v. Tri-Square Const., Inc., 635 So. 2d 125, 126-27 (Fla. 3d DCA 1994).

## E. The Motion to Substitute and the Verified Complaint

PennyMac points out that "[b]oth the motion to substitute plaintiff and the verified [second] amended complaint stated CitiMortgage transferred its interest in the note and mortgage to PennyMac." PennyMac contends that the allegations in these papers were sufficient to establish its entitlement to enforce the lost note. We disagree for several reasons.

First, the motion to substitute was unsworn. Therefore, it was plainly insufficient as a basis for supporting a motion for summary judgment. See Fla. R. Civ. P. 1.510(e). However, PennyMac's second amended complaint was verified. With regard to the sufficiency of a verified complaint to support a motion for summary judgment, this court has said:

> We acknowledge that "[a] verified complaint may serve the same purpose as an affidavit supporting or opposing a motion for summary judgment." "However, in order to be so considered, the allegations of the verified complaint must meet the requirements of the rule governing supporting and opposing affidavits." Rule 1.510(e), in turn, provides that affidavits must be based on personal knowledge and shall "show affirmatively that the affiant is competent to testify to the matters stated therein." A verification which is improperly based on information and belief is insufficient to entitle the verifying party to relief because the verification is qualified in nature.

Ballinger v. Bay Gulf Credit Union, 51 So. 3d 528, 529 (Fla. 2d DCA 2010) (citations omitted). In this case, the verification of the complaint in accordance with Florida Rule of Civil Procedure 1.110(b) stated: "Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief." Where, as in this case, a verification of a complaint is based on knowledge and belief and fails to show that the affiant had personal knowledge of the matters stated in the complaint, the trial court cannot consider the verified complaint as a basis for the entry of summary judgment. See Ballinger, 51 So. 3d at 530; Colon v. JP Morgan Chase Bank, N.A., 162 So. 3d 195, 199 (Fla. 5th DCA 2015); see also Lindgren v. Deutsche Bank Nat'l Trust Co., 115 So. 3d 1076, 1076 (Fla. 4th DCA 2013) (finding a verification based on "information and belief" to be insufficient for purposes of summary judgment).

Second, the allegations of the second amended complaint regarding PennyMac's standing to enforce the note were conclusory in nature. The pertinent allegations did not state any facts regarding PennyMac's claim that CitiMortgage had "transferred all rights in the note and mortgage to PennyMac Corp." This conclusory statement was insufficient to sustain PennyMac's burden for summary judgment. See Jones Constr. Co. of Cent. Fla., Inc. v. Fla. Workers' Comp. JUA, Inc., 793 So. 2d 978, 980 (Fla. 2d DCA 2001) (holding that an affidavit containing "only conclusory statements of ultimate fact [was] insufficient to sustain the movant's burden of demonstrating the absence of any genuine issue of material fact"); Seinfeld v. Commercial Bank & Trust Co., 405 So. 2d 1039, 1041 (Fla. 3d DCA 1981) (stating that general statements in an affidavit, which are framed only in conclusions of law, do not satisfy the movant's burden on a motion for summary judgment).

Third, the allegations of the second amended complaint regarding PennyMac's claim to entitlement to enforce the note are in hopeless conflict with one of the affidavits that PennyMac itself filed in support of its amended motion for summary judgment. PennyMac filed an Affidavit of Indebtedness sworn to by a "default specialist" for PennyMac Loan Services, LLC, the alleged servicer of the loan for PennyMac. In this affidavit, the default specialist stated that PennyMac "is the holder of said Note and Mortgage."[2] Thus PennyMac's own affidavit undercut and contradicted

---

[2]Because the note had been lost long before the alleged transfer from CitiMortgage, it would be a physical impossibility for PennyMac to be a holder of the note. " 'Holder' means: (a) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession. . . ." § 671.201(21)(a), Fla. Stat. (2012). "To hold a note under the Uniform Commercial Code ordinarily connotes possession of the document itself." Phan v. Deutsche Bank

- 13 -

the theory advanced in the complaint that it qualified under section 673.3011(3) as a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 673.3091.  Unquestionably, PennyMac could not meet its burden to establish the nonexistence of a material fact regarding its standing when the affidavit that it filed in support of its motion was in express and irreconcilable conflict with the theory of standing alleged in its operative complaint.

## F.  Standing as the Loan Servicer

Finally, PennyMac asserts that it "had standing as the loan servicer."  This argument is without merit.  We recognize that "[a] servicer that is not the holder of the note may have standing to commence a foreclosure action on behalf of the real party in interest, but it must present evidence, such as an affidavit or a pooling and servicing agreement, demonstrating that the real party in interest granted the servicer authority to enforce the note."  Rodriguez v. Wells Fargo Bank, N.A., 178 So. 3d 62, 63 (Fla. 4th DCA 2015) (citing Elston/Leetsdale, LLC v. CWCapital Asset Mgmt. LLC, 87 So. 3d 14, 17 (Fla. 4th DCA 2012)).  But in this case, two of the affidavits filed in support of the amended motion for summary judgment recite that the servicer for Mr. Houk's loan is PennyMac Loan Services, LLC, not the plaintiff, PennyMac Corp.  In making the argument about its purported standing as the loan servicer, PennyMac seems to have forgotten or ignored its own affidavits.

---

Nat'l Trust Co., ex rel. First Franklin Mortg. Loan Trust 2006-FF11, 198 So. 3d 744, 747 (Fla. 2d DCA 2016).

## V. CONCLUSION

For the foregoing reasons, PennyMac failed to meet its burden of showing the nonexistence of a genuine issue of material fact regarding its entitlement to enforce the lost note. Accordingly, we reverse the final summary judgment of foreclosure and remand this case to the circuit court for further proceedings.

Reversed and remanded.


MORRIS and ROTHSTEIN-YOUAKIM, JJ., Concur.