DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERTO D. VIEIRA** a/k/a **ROBERTO VIEIRA** and
**SHAWN D. VIEIRA** a/k/a **SHAWN VIEIRA,**
Appellants,

v.

**PENNYMAC CORP.** and
**THE TIMBERS OF BOCA HOMEOWNERS ASSOCIATION, INC.,**
Appellees.

No. 4D16-3430

[March 21, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Susan R. Lubitz, Senior Judge; L.T. Case No. 50-2015-CA-001150 AW.

Kendrick Almaguer, Thomas Eross, Jr., and Kyle M. Costello of The Ticktin Law Group, PLLC, Deerfield Beach, for appellants.

Nancy W. Wallace of Akerman LLP, Tallahassee, and William P. Heller and Henry H. Bolz of Akerman LLP, Fort Lauderdale, for appellee PennyMac Corp.

CONNER, J.

Roberto D. Vieira and Shawn D. Vieira ("the Borrowers") appeal the final judgment of foreclosure in favor of PennyMac Corp ("PennyMac") asserting the trial court erred by (1) determining PennyMac had standing to enforce a lost note, and (2) rejecting their attempt to amend pleadings to conform to the evidence. Because we agree with the Borrowers' first contention, we do not address the second contention. We agree that PennyMac failed to prove at trial that the initial plaintiff had standing to enforce the note. We reverse the final judgment and remand for the trial court to enter judgment in favor of the Borrowers.

*Background*

In January 2015, JP Morgan Chase Bank, National Association ("JP Morgan") filed the initial complaint in this case, seeking to foreclose on a

note and mortgage given by the Borrowers to Chase Bank USA, N.A. ("Chase Bank"), the original lender. The complaint also sought to re-establish the lost note secured by the mortgage. JP Morgan asserted that although the note was lost, it was entitled to enforce the instrument pursuant to section 673.3091, Florida Statutes (2017). Attached to the complaint was a copy of the note and mortgage. The complaint alleged in part that "Plaintiff will establish the terms and conditions of the subject note in addition to its right to enforce. A lost note affidavit is attached hereto as Exhibit 'A.'" The body of the three-page complaint made no reference to Chase Bank.

The lost note affidavit attached to the complaint stated, in part:

> A copy of the original note and, if applicable, allonge(s) is/are attached hereto as Exhibit A.
>
> *The copy does not display endorsements.*

(emphasis added). Exhibit A attached to the lost note affidavit included a copy of the note, but no copy of an allonge was attached.

The Borrowers eventually filed an answer, asserting that JPMorgan lacked standing and failed to fulfill conditions precedent. Subsequently, JP Morgan moved to substitute PennyMac as plaintiff and to change the case style, alleging that JP Morgan assigned the mortgage to PennyMac after the suit was filed, attaching a copy of the recorded assignment. The assignment only transferred the mortgage and not the note. An order was entered substituting PennyMac as the plaintiff.

At trial, PennyMac called two witnesses; one a JP Morgan employee and the other a PennyMac employee. We summarize the testimony that is most pertinent to disposition of this appeal.

The JP Morgan witness testified that Chase Bank was the first loan servicer, JP Morgan was the second servicer, and PennyMac was the current servicer. She testified that the Borrowers were given a notice of assignment, sale and transfer of servicing rights from Chase Bank to JPMorgan. She further testified about the process JP Morgan followed regarding a search for a lost note. According to the witness, JPMorgan was in possession of the note because there was an imaged copy that was uploaded during JP Morgan's servicing of the loan, though she did not recall the specific date of the upload, believing it to be around 2010. Additionally she testified that after reviewing JP Morgan's records and Chase Bank's records, nothing led her to believe that the note could be

reasonably located. She admitted that she did not know the exact date the note was lost.

Through the JP Morgan witness, PennyMac introduced into evidence the original lost note affidavit, a copy of which was attached to the complaint. According to the witness, the affidavit was executed in September 2014 (four months before the complaint was filed). Unlike the copy of the affidavit attached to the complaint, the original affidavit had an original allonge attached to it, stating:

> This Allonge is being prepared to evidence the transfer and assignment of ownership of that certain Mortgage Note described above, which was executed in favor of CHASE BANK USA, NA, to the below-named Purchaser. The original of the Mortgage Note has been lost or misplaced by the below-named seller. A copy of the fully-executed Mortgage Note is attached to that certain Lost Note affidavit dated SEPTEMBER 18, 2014 executed by the Seller.

The allonge was undated and contained a signature by a JP Morgan representative, but no signature by a Chase Bank representative. The JP Morgan witness could not say when the allonge was executed or when it was imaged into any system.

Through the JP Morgan witness, PennyMac also introduced into evidence the assignment of mortgage from JP Morgan to PennyMac.

PennyMac's witness testified that when PennyMac acquired servicing rights, the prior servicer, JP Morgan, sent all loan records. She further testified that the Borrowers' loan was part of a Purchase of Servicing Agreement ("PSA"), which governed how PennyMac serviced the loan. The PSA indicated that the Borrowers' loan was part of a pool of loans for which PennyMac purchased the servicing rights from JP Morgan in January 2015.

At the conclusion of the evidence, the trial court denied the Borrowers' motion for involuntary dismissal on the issue of standing. A final judgment was entered against the Borrowers, after which the Borrowers gave notice of appeal.

*Analysis*

The standard of review of whether the trial court's factual findings are legally sufficient to establish standing is a question of law subject to *de novo* review. *Elman v. U.S. Bank, N.A.*, 204 So. 3d 452, 454 (Fla. 4th DCA

2016).  A trial court's factual findings are reviewed for competent substantial evidence.  *Id.* at 455; *Jasser v. Saadeh*, 91 So. 3d 883, 884 (Fla. 4th DCA 2012) (quoting *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008)) (reciting that judgment entered after a nonjury trial is reviewed for competent, substantial evidence).  "When reviewing a judgment rendered after a nonjury trial, the trial court's findings of fact come to the appellate court with a presumption of correctness and will not be disturbed unless they are clearly erroneous." *State Tr. Realty, LLC v. Deutsche Bank Nat'l Tr. Co. Ams.*, 207 So. 3d 923, 925 (Fla. 4th DCA 2016) (quoting *Stone v. BankUnited*, 115 So. 3d 411, 412 (Fla. 2d DCA 2013)).

Because it was substituted as plaintiff after suit was filed, PennyMac had to prove at trial that JP Morgan had standing when the initial complaint was filed, as well as its own standing when the final judgment was entered.  *Lamb v. Nationstar Mortg., LLC*, 174 So. 3d 1039, 1040 (Fla. 4th DCA 2015).  Throughout the proceedings below, the note was lost. Thus, PennyMac had to prove standing and the right to enforce the note, using section 673.3091, Fla. Stat. (2017).  Section 673.3091(1)(a), requires in part that "[t]he person seeking to enforce the instrument was *entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred.*" (emphasis added).

Standing may be established by possession of the note specially indorsed to the plaintiff or indorsed in blank.  *Peoples v. Sami II Tr. 2006-AR6*, 178 So. 3d 67, 69 (Fla. 4th DCA 2015); § 673.2031(1), Fla. Stat. (2017) ("An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."); § 673.2031(2), Fla. Stat. ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course . . . .").  A plaintiff may also prove standing "through evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer."  *Stone*, 115 So. 3d at 413 (quoting *BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques*, 28 So. 3d 936, 939 (Fla. 2d DCA 2010)).  That is because "if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor . . . ." § 673.2031(3), Fla. Stat.

In this case, the original lender and payee of the note was Chase Bank. Although the parties make various arguments and counter-arguments regarding standing, we perceive the critical issue to be whether sufficient proof was presented at trial to show that Chase Bank transferred the note to JP Morgan, the original plaintiff, prior to suit being filed.

The Borrowers contend on appeal that PennyMac failed to prove that JP Morgan had standing to foreclose when it filed suit. More specifically, the Borrowers argue that PennyMac did not produce substantial competent evidence that JP Morgan was in possession of the allonge at the inception of the case. They point out that the allonge was not attached to the complaint when it was filed; instead, the allonge appeared at trial with no dates of creation on its face. Moreover, PennyMac's witness could not offer evidence that the allonge was created or executed prior to the filing of the complaint.

Additionally, the Borrowers argue there was no proof of transfer of the note from Chase Bank to JP Morgan. The allonge did not contain an indorsement from Chase Bank, and it was not signed by a representative of Chase Bank. The assignment of mortgage entered into evidence only transferred the mortgage and not the note. The Borrowers also assert that the notice of transfer or sale of servicing rights was not an effective transfer of the note.

Addressing the issue of standing at the inception of the suit, PennyMac contends on appeal that it presented sufficient evidence to prove that JP Morgan's authority to enforce the note derived from its status as a non-holder in possession of the note with the rights of a holder at the time of the loss. PennyMac acknowledges that its contention is based on "multi-tiered evidence" of transfer of the note by Chase Bank. It begins the analysis with the assertion that the evidence showed that Chase Bank and JP Morgan are "related entities." PennyMac argues that the allonge memorialized the transfer of the note from Chase Bank to JP Morgan. It further asserts that to agree with the Borrowers' position would require the absurd inference that JP Morgan made a six-figure sale of the note to PennyMac without authority from Chase Bank, a related entity that used the same address in the public records.

Additionally, PennyMac argues that despite case law to the contrary, the assignment of the mortgage alone, without the inclusion of the note, bolsters the proof that JP Morgan had standing at the inception of the suit. For this argument, PennyMac relies on section 701.01, Florida Statutes (2017). Finally, PennyMac argues that the evidence of escrow advances corroborate JP Morgan's standing.

However, there are problems with PennyMac's "multi-tiered evidence" arguments. First, it is unclear in what way Chase Bank and JP Morgan are "related entities." No evidence was presented that JP Morgan and Chase Bank merged or that Chase Bank was completely bought out by JP Morgan. As we have made clear in the past, separate corporate entities, even parent and subsidiary entities, are legally distinct entities. *See Wright v. JPMorgan Chase Bank, N.A.*, 169 So. 3d 251, 251–52 (Fla. 4th DCA 2015) (noting a parent corporation and its wholly-owned subsidiary are separate and distinct legal entities and a parent corporation cannot exercise the rights of the subsidiary corporation); *see also Houk v. PennyMac Corp.*, 210 So. 3d 726, 734 (Fla. 2d DCA 2017) (noting a conflict of allegations between affidavits and the complaint where the affidavits alleged PennyMac Loan Services, LLC was the servicer and the complaint alleged PennyMac Corp. was the servicer). There was no explicit testimony or other evidence that Chase Bank sold or equitably transferred the note to JP Morgan.

Additionally, PennyMac cites no case law in support of its argument that the assignment of mortgage (without an assignment of the note) bolsters the proof that JP Morgan had standing at the inception of the suit. Instead, PennyMac cites to section 701.01, which provides:

> Any mortgagee may assign and transfer any mortgage made to her or him, and the person to whom any mortgage may be assigned or transferred may also assign and transfer it, and that person or her or *his assigns or subsequent assignees may lawfully have*, take and pursue *the same means and remedies which the mortgagee may lawfully have*, take or pursue for the foreclosure of a mortgage and for the recovery of the money secured thereby.

(emphases added). However, although the statute makes clear that an assignee has the "same means and remedies the mortgagee may lawfully have," we have previously held that "[t]he mortgage follows the assignment of the promissory note, but an assignment of the mortgage without an assignment of the debt creates no right in the assignee." *Tilus v. AS Michai LLC*, 161 So. 3d 1284, 1286 (Fla. 4th DCA 2015) (citing *Bristol v. Wells Fargo Bank, Nat'l Ass'n*, 137 So. 3d 1130, 1133 (Fla. 4th DCA 2014)); *see also Lamb*, 174 So. 3d at 1041 ("A bank does not have standing to foreclose where it relies on an assignment of the mortgage only."). Therefore, we disagree with PennyMac's assertion that the assignment of mortgage alone, without a transfer of the note, establishes that JP Morgan had standing at the inception of the suit.

PennyMac's argument that the allonge memorialized the transfer of the note from Chase Bank to JP Morgan reveals the biggest flaw in PennyMac's contention that JP Morgan had standing at the inception of the suit. The major stumbling block is that the allonge was signed by a representative of <u>JP Morgan</u>, and there is no signature on the document by <u>Chase Bank</u>. Section 673.2041, Florida Statutes (2017), clearly requires a signature by the current note holder to constitute an indorsement and transfer of the note to another payee or bearer. § 673.2041, Fla. Stat. ("The term 'indorsement' means a signature . . . for the purpose of negotiating the instrument [or] restricting payment of the instrument."). We have previously said, "[t]o transfer a note, there must be an indorsement, which itself *must* be 'on [the] instrument' or on 'a paper affixed to the instrument.'" *Jelic v. BAC Home Loans Servicing, LP*, 178 So. 3d 523, 525 (Fla. 4th DCA 2015)(second alteration in original)(emphasis added)(quoting § 673.2041(1), Fla. Stat.).

Next, in support of its argument that evidence of escrow advances corroborates JP Morgan's standing, PennyMac cites *Peuguero v. Bank of America, N.A.*, 169 So. 3d 1198 (Fla. 4th DCA 2015), where we said that a foreclosure plaintiff paying taxes and fees associated with the mortgaged property prior to suit is "a noteworthy factor in determining standing, as financial institutions are not known to incur expenses on behalf of properties for which they do not hold an interest." *Id.* at 1202. However, our statement was in the context of facts where the lender originating the loan signed an indorsement to Countrywide Bank, the entity which filed the foreclosure suit. *Id.* at 1200. After suit was filed, Bank of America was substituted as plaintiff on the contention that Countrywide Bank merged into Bank of America. *Id.* In other words, we viewed the evidence of advanced fees as corroboration of more direct evidence of transfer of the note. *Id.* at 1202. We never held that such evidence, standing alone, would be sufficient to establish standing. In this case, there is no other more direct evidence of a transfer of the note for the evidence of the escrow advances to corroborate.

Finally, the remaining testimonial and documentary "multi-tiered evidence" discussed in PennyMac's brief does not demonstrate that JP Morgan had standing at the inception of the suit. As discussed above, neither of PennyMac's witnesses directly testified about the transfer of the note from Chase Bank to JP Morgan. Instead, the witness testimony referred a few times to Chase Bank and JP Morgan as "Chase entities." Likewise, the notice of sale and transfer of servicing rights, loan acquisition screenshots, and lost note affidavit do not constitute direct or circumstantial evidence of the transfer of the note from Chase Bank to JP Morgan.

Although we agree with PennyMac that the evidence proved that JP Morgan had possession of the note when the note was lost and prior to suit being filed, PennyMac failed to prove that prior to suit, Chase Bank had indorsed the note over to JP Morgan. Thus, we conclude that PennyMac failed to prove that JP Morgan had standing at the inception of the suit. Therefore, we reverse the final judgment in favor of PennyMac and direct the trial court to enter a judgment in favor of the Borrowers.

*Reversed and remanded.*

WARNER and FORST, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

8