DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CATHERINE P. COX,**
Appellant,

v.

**U.S. BANK TRUST N.A.,** as Trustee for LSF9 Master Participation Trust,
Appellee.

No. 4D18-3424

[March 11, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward A. Garrison, Judge; L.T. Case No. 502018CA000536XXXXMB.

Catherine P. Cox, Delray Beach, pro se.

David Rosenberg, Cynthia L. Comras, and Jarrett Cooper of Robertson, Anschutz & Schneid, P.L., Boca Raton, for appellee.

GERBER, J.

The purchaser of a residential property, which was encumbered by a mortgage defaulted upon by a previous borrower, appeals from the circuit court's final judgment granting the plaintiff's foreclosure action against the property. The purchaser raises two arguments: (1) the circuit court erred in refusing to allow her to contest the plaintiff's standing to foreclose; and (2) the plaintiff failed to prove it had standing to foreclose.

On the purchaser's first argument, the plaintiff concedes the circuit court erred in refusing to allow her to contest the plaintiff's standing to foreclose. However, the plaintiff argues we should conclude the error was harmless because the plaintiff proved it had standing to foreclose.

We agree with the plaintiff's concession that the circuit court erred in refusing to allow the purchaser to contest the plaintiff's standing to foreclose. However, we conclude the error was not harmless, as the purchaser proffered competent substantial evidence to support her argument the plaintiff lacked standing to foreclose, and the circuit court did not consider the proffered evidence or argument. Therefore, we reverse

the final judgment and remand for a new trial, in which the standing issue may be decided on the merits of both sides' evidence and arguments.

We present this opinion in five sections:
1. The plaintiff's foreclosure action against the purchaser;
2. The purchaser's "lack of standing" affirmative defense;
3. The circuit court's rulings at the non-jury trial;
4. This appeal; and
5. Our review.

## 1. *The Plaintiff's Foreclosure Action Against the Purchaser*

The instant case began when the plaintiff filed a foreclosure action against the purchaser, the previous borrower, and others.

The plaintiff's verified complaint alleged that, in January 2006, the borrower executed a note payable to "Countrywide Bank, N.A." which was secured by a mortgage on the property at issue. Attached to the plaintiff's verified complaint was a copy of the note containing an undated blank endorsement by "Countrywide Bank, N.A." The plaintiff alleged it now held the original note, which had been in default since June, 2013. The plaintiff further alleged it had named the purchaser as a defendant because "the property is now owned by [the purchaser]." The plaintiff sought a judgment foreclosing on the mortgaged property, among other relief.

The borrower did not file any response to the plaintiff's verified complaint. Therefore, the plaintiff obtained a clerk's default against the borrower.

## 2. *The Purchaser's "Lack of Standing" Affirmative Defense*

The purchaser filed a verified answer and affirmative defenses. The purchaser alleged the plaintiff lacked standing to foreclose. According to the purchaser's allegations:

- In March 2007, a year after the borrower executed the note payable to "Countrywide Bank, N.A.," that entity converted from a national bank charter to a federal savings bank charter named "Countrywide Bank, FSB."

- In October, 2008, "Countrywide Bank, FSB" filed the first foreclosure action against the borrower based on the note. In the complaint, "Countrywide Bank, FSB" alleged it "owns and is the holder of the Note and Mortgage," but the original note was lost or

misplaced. "Countrywide Bank, FSB" attached to the complaint a copy of the note. *That copy did not contain any endorsements.*

- In November, 2008, an assignment of mortgage from "Countrywide Bank, N.A." to "Countrywide Bank, FSB" was filed in the Palm Beach County official records. According to the purchaser, that assignment of mortgage did not serve to transfer the note from "Countrywide Bank, N.A." to "Countrywide Bank, FSB," because "[a] mortgage follows the assignment of the promissory note, but an assignment of the mortgage without an assignment of the debt creates no right in the assignee." *Tilus v. AS Michai LLC*, 161 So. 3d 1284, 1286 (Fla. 4th DCA 2015).

- In February, 2009, "Countrywide Bank, FSB" applied to convert to a national bank charter, and on the same day, Bank of America applied to acquire the new Countrywide entity, upon which "Countrywide FSB" would cease to exist.

- In December, 2010, in the foreclosure case against the borrower, "Countrywide Bank, FSB" filed the original note and mortgage with the Clerk's office. *The original note now contained an undated blank endorsement by the original lender entity, "Countrywide Bank, N.A."* According to the purchaser, "[because] the blank indorsement is un-dated, it is impossible to determine which, if any, of the numerous 'Countrywide' incarnations may have been in possession of the note when it was endorsed, and therefore entitled as the holder to enforce it and/or negotiate it."

- In April, 2013, "Countrywide Bank, FSB" filed a voluntary dismissal of the first foreclosure action against the borrower.

- In July, 2013, the borrower's homeowners' association obtained a default final judgment against him for unpaid HOA fees, resulting in the HOA receiving title to the property.

- In September, 2013, the HOA sold the property to the purchaser.

- In December, 2013, the mortgage was assigned from "Bank of America, N.A., successor by merger to Countrywide Bank, N.A. f/k/a Countrywide Bank, FSB" to "Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, F/K/A Countrywide Home Loans Servicing, LP."

3

- In September, 2015, the mortgage was assigned from "Bank of America, N.A. as successor by merger to Countrywide Bank, FSB c/o Caliber Home Loans, Inc." to "LSF9 Master Participation Trust, c/o Caliber Home Loans, Inc."

- In August, 2017, the mortgage was assigned from "LSF9 Master Participation Trust" to "U.S. Bank Trust, N.A., as trustee for LSF9 Master Participation Trust" (the plaintiff/appellee in this action).

- "Since we do not know when, or by what entity the Note was endorsed in blank (between October 30, 2008, when the Note was reported as 'lost,' and December 2, 2010, when filed with the Clerk of Court with an un-dated blank endorsement purportedly executed by a representative of a Countrywide entity which no longer existed) clearly plaintiff does not have standing to proceed and the foreclosure must be dismissed. Further, there have been no assignments of the Note, and assignment of the mortgage does not transfer the debt."

### 3. *The Circuit Court's Rulings at the Non-Jury Trial*

The case went to a non-jury trial. At the beginning of trial, the plaintiff's counsel moved for the purchaser to "not be permitted to contest [the] foreclosure action except as to her right of redemption after the sale of the property."

In response, the purchaser argued she was permitted to contest the plaintiff's standing pursuant to our opinion in *3709 North Flagler Drive Prodigy Land Trust v. Bank of America, N.A.*, 226 So. 3d 1040 (Fla. 4th DCA 2017). In that case, the circuit court refused to allow a purchaser to assert, as a defense at trial, the plaintiff's alleged lack of standing. *Id.* at 1041. Thus, the circuit court required the plaintiff to prove only its damages, and not its standing. *Id.* We reversed for a new trial in which the purchaser could litigate a lack of standing defense. *Id.* at 1042-43. We reasoned:

> [The purchaser] obtained title to the property subject to the mortgage, no doubt. Such a purchaser is estopped from contesting a mortgage which is *valid* on its face. But contesting standing of a plaintiff to bring a foreclosure action *is not* contesting the validity of the mortgage itself. Further, if the plaintiff does not have standing, it is not entitled to enforce the note and foreclose on the property. Standing in a foreclosure proceeding requires the plaintiff to show that it is

4

the holder or is in possession of the note at the time of filing suit. A subsequent title owner may contest the plaintiff's standing to foreclose on the mortgage to the extent that there is no prejudicial delay to the proceedings occasioned by any transfer of ownership during the pending process. A subsequent purchaser has an interest in assuring that the foreclosing plaintiff actually has the authority to bring the suit and is entitled to raise such a defense so long as they do not cause unreasonable delay to any ongoing proceedings. To hold otherwise would allow a stranger to the note and mortgage to foreclose on the property, and a subsequent purchaser would never have the ability to defend against the taking of a bona fide interest in the property through a foreclosure sale.

*Id.* at 1042 (emphasis in original; internal citations omitted).

Despite our reasoning in *3709,* the circuit court in the instant case misinterpreted *3709* as holding that while the plaintiff had to prove its standing, the purchaser could not contest the plaintiff's standing.

Fortunately, however, the circuit court permitted the purchaser to proffer her evidence and argument as to why the plaintiff allegedly lacked standing. The purchaser argued: "I would have been prepared to prove that the [entity] that purportedly placed a blank endorsement . . . at some unknown moment in time . . . was invalid because [the entity] did not exist at the time purportedly that note was [endorsed]."

The purchaser proffered the documents she would have offered as evidence to support the argument above. As the purchaser proffered each document, the plaintiff stated it would have objected to each document's admission into evidence on the grounds of relevance, among other objections. The circuit court stated it would have sustained each objection based on its ruling not permitting the purchaser to contest standing.

During the trial, the plaintiff's sole witness testified that when the plaintiff filed its foreclosure action against the purchaser, the plaintiff possessed the original undated blank-endorsed note, which matched the copy filed with the complaint. However, the plaintiff did not present evidence that "Countrywide Bank, N.A." still existed at whatever time its blank endorsement was applied.

During cross examination of the plaintiff's witness, the purchaser asked if the witness knew the date on which the note had been endorsed

in blank. The plaintiff objected to relevance, and the circuit court sustained the objection.

After the plaintiff presented its evidence as to its alleged standing, which relied only on its possession of the undated blank-endorsed note when it filed its action against the purchaser, the circuit court orally announced a final judgment in the plaintiff's favor. The circuit court also entered a written judgment consistent with the oral pronouncements. The circuit court never considered the merits of the purchaser's evidence and argument on the plaintiff's alleged lack of standing.

### 4. *This Appeal*

This appeal followed. The purchaser raises two arguments: (1) the circuit court erred in refusing to allow the purchaser to contest the plaintiff's standing to foreclose; and (2) the plaintiff failed to prove it had standing to foreclose.

As mentioned above, on the purchaser's first argument, the plaintiff concedes the circuit court erred in refusing to allow the purchaser to contest the plaintiff's standing to foreclose, pursuant to our holding in *3709*.

However, the plaintiff argues we should conclude the error was harmless because the plaintiff filed with the circuit court the original undated blank-endorsed note in the same condition as the copy attached to the complaint. The plaintiff relies upon our decision in *Ortiz v. PNC Bank, Nat'l Ass'n,* 188 So. 3d 923 (Fla. 4th DCA 2016):

> We recognize the fact that a copy of a note is attached to a complaint does not conclusively or necessarily prove that the Bank had actual possession of the note at the time the complaint was filed. However, *if the Bank later files with the court the original note in the same condition as the copy attached to the complaint, then we agree that the combination of such evidence is sufficient to establish that the Bank had actual possession of the note at the time the complaint was filed and, therefore, had standing to bring the foreclosure action, <u>absent any testimony or evidence to the contrary</u>.*

*Id.* at 925 (emphases added).

The purchaser replies the error was not harmless, because she sought to present "evidence to the contrary," which the circuit court refused.

6

According to the purchaser's argument, her evidence would have shown that, when "Countrywide Bank, N.A.'s" blank endorsement was applied to the note, that entity no longer existed, and thus that entity was not the note's holder, making the undated blank endorsement a nullity. *See Vieira v. PennyMac Corp.*, 241 So. 3d 193, 197 (Fla. 4th DCA 2018) ("As we have made clear in the past, separate corporate entities, even parent and subsidiary entities, are legally distinct entities."). Thus, the purchaser argues, at a minimum, we should reverse and remand for a new trial at which she can contest the plaintiff's standing to foreclose.

In the alternative, the purchaser argues we should reverse and remand with instructions for the circuit court to enter an involuntary dismissal of the plaintiff's action, because the plaintiff did not present evidence that "Countrywide Bank, N.A." still existed at whatever time its blank endorsement was applied.

### 5. *Our Review*

Our review is de novo. *See Caraccia v. U.S. Bank, Nat'l Ass'n*, 185 So. 3d 1277, 1278 (Fla. 4th DCA 2016) ("We review the sufficiency of the evidence to prove standing to bring a foreclosure action *de novo*.") (citation omitted).

We agree with the purchaser's argument for a new trial, but not for an involuntary dismissal. Our decision is controlled in part by *PennyMac Corp. v. Frost*, 214 So. 3d 686 (Fla. 4th DCA 2017), which recognizes the existence of the standing defense which the purchaser sought to litigate. We examine *PennyMac* in more detail.

In *PennyMac*, the borrower executed a note and mortgage in favor of Washington Mutual Bank, F.A. *Id.* at 688. The note contained a blank endorsement made by Washington Mutual, but it was marked "VOID." *Id.* The note also contained an allonge with a purported blank endorsement by "JPMorgan Chase Bank, National Association, successor in interest by purchase from the FDIC as Receiver of Washington Mutual Bank, f/k/a Washington Mutual Bank, F.A." *Id.*

After the borrower defaulted, PennyMac filed a foreclosure action against the borrower. *Id.* At trial, PennyMac presented evidence showing it possessed the original note with JPMorgan's endorsement when PennyMac filed the complaint. *Id.*

The borrower moved for an involuntary dismissal, arguing that PennyMac failed to show how JPMorgan had the right to enforce the note

7

at the time JPMorgan transferred the note to PennyMac. *Id.* The circuit court granted the borrower's motion for involuntary dismissal. *Id.*

On appeal, PennyMac primarily argued the involuntary dismissal should be reversed because it possessed the original blank-endorsed note from the case's inception. *Id.*

We disagreed with PennyMac's argument and affirmed. *Id.* at 688-89. We reasoned:

> The underlying premise of PennyMac's argument . . . is flawed because the indorsement by JPMorgan did not constitute a blank indorsement.
>
> . . . Under the UCC, a "person entitled to enforce" a negotiable instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce. § 673.3011(1)–(3), Fla. Stat. (2015).
>
> A "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." § 671.201(21)(a), Fla. Stat. (2015). Thus, a plaintiff who is not the original lender may establish its standing to foreclose with proof that it was in possession of the original note with a blank or special indorsement when it filed the complaint.
>
> Generally, "if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument *and its indorsement by the holder*." § 673.2011(2), Fla. Stat. (2015) (emphasis added). By definition, a "blank indorsement" must be "made by the holder" of the note. § 673.2051(2), Fla. Stat. (2015).
>
> An indorsement "made by a person who is not the holder" of the note is defined as an "anomalous indorsement." § 673.2051(4), Fla. Stat. (2015). "An anomalous indorsement does not affect the manner in which the instrument may be negotiated." *Id.*
>
> Here, from the face of the note, JPMorgan's indorsement was an anomalous indorsement, not a blank indorsement. Because the indorsement by the original lender was void,

8

JPMorgan could not have been a holder of the note. At best, JPMorgan may have been a nonholder in possession of the note with the rights of a holder. Thus, because JPMorgan was not a holder of the note, JPMorgan's indorsement was not a blank indorsement and did not negotiate the note.

Any rights PennyMac had to the note were purely derivative to those of JPMorgan. "A transfer vests in the transferee only the rights enjoyed by the transferor, which may include the right to enforcement, through the shelter rule." *Murray v. HSBC Bank USA*, 157 So. 3d 355, 358 (Fla. 4th DCA 2015) (citation, internal quotation marks, and brackets omitted). To prove standing as a nonholder in possession with the rights of a holder, the plaintiff must prove the chain of transfers starting with the first holder of the note. *Id.* at 357–58. Where the plaintiff "cannot prove that [a transferor] had any right to enforce the note, it cannot derive any right from [the transferor] and is not a nonholder in possession of the instrument with the rights of a holder to enforce." *Id.* at 359.

In this case, because JPMorgan's indorsement was merely an anomalous indorsement, PennyMac's possession of the note did not make it a holder. Therefore, PennyMac needed to establish its standing by showing that it was a nonholder in possession of the note with the rights of a holder, which required PennyMac to prove the chain of transfers in accordance with *Murray*. Correspondingly, PennyMac was required to prove that JPMorgan, as the transferor, had the right to enforce the note at the time of the transfer. PennyMac failed to do so at trial.

. . . .

In sum, because PennyMac failed to prove that it was entitled to enforce the note, we affirm the trial court's entry of an involuntary dismissal.

*Id.* (other internal citations and quotation marks omitted).

The *PennyMac* "anomalous indorsement" standing defense is exactly what the purchaser sought to assert in this case. However, because the circuit court erred in excluding the purchaser from asserting that argument in this case, a reasonable possibility exists that the error contributed to the outcome, i.e., the error was not harmless. *See Special*

9

*v. West Boca Med. Ctr.,* 160 So. 3d 1251, 1256 (Fla. 2014) ("To test for harmless error, the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict. Alternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict.") (citation omitted).

### *Conclusion*

Based on the foregoing, we reverse for a new trial in which the purchaser can litigate her lack of standing defense by presenting her proffered evidence and arguments, as well as any evidence obtained since the first trial. We conclude, without further discussion, that the plaintiff's other arguments for affirmance lack merit.

*Reversed and remanded for new trial.*

LEVINE, C.J., and MAY, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**